# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-4039

_____

Janet M. Strate,       *
      *
         Appellant,      *   Appeal from the United States
      *   District Court for the
      v.      *   Eastern District of Missouri
      *
Midwest Bankcentre, Inc.,      *
      *
         Appellee.      *

_____

Submitted: September 17, 2004
Filed: February 17, 2005

_____

Before MURPHY, McMILLIAN and BENTON, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Janet M. Strate appeals from a final order entered in the United States District Court for the Eastern District of Missouri granting summary judgment in favor of her former employer, Midwest Bankcentre, Inc., (the Bank), on her claims of unlawful employment discrimination and retaliation under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., the Missouri Human Rights Act (MHRA), Mo.Rev.Stat. § 213.010 et seq., and the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1000 et seq., among other statutes. Strate v. Midwest Bankcentre, Inc., No. 4:02-CV-219 (E.D. Mo. Nov. 14, 2003) (hereinafter "slip op."). For reversal, Strate argues that the district court erred in: (1) formulating the

applicable legal standard under <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973) (<u>McDonnell Douglas</u>), without incorporating a "modification" of that standard under <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003) (<u>Desert Palace</u>), and (2) applying the law to the evidence in the record on summary judgment.  She contends that she established a genuine issue of material fact as to whether her relationship or association with her disabled newborn child was a motivating factor in the Bank's decision to eliminate her position and effectively terminate her employment.  She argues that summary judgment was therefore improperly granted on several of her claims.[1]  For the reasons discussed below, we affirm in part and reverse in part and remand the case to the district court for further proceedings consistent with this opinion.

Jurisdiction was proper in the district court based upon 28 U.S.C. §§ 1331, 1343.  Jurisdiction is proper in this court based upon 28 U.S.C. § 1291.  The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## Background

The following is a summary of the background facts as set forth in the district court's summary judgment order.  Slip op. at 3-8.  Strate began working for the Bank on June 18, 1990.  She held the position of auditor until August 1997, when she was promoted to Senior Vice President (VP) of Operations and Information Systems.  In December 1998, she was promoted to Executive VP of Retail Banking, Trust Services, and Human Resources.  One month later, in January 1999, she became the Executive VP of Consumer Services and a member of the Bank's executive committee.  In May of 2000, Strate became the Executive VP of Operations and

---

[1]Strate does not appeal the district court's order with respect to claims she brought under the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), and the Family Medical Leave Act, 29 U.S.C. § 2611.

Information Systems. Afterward, Tom Green and Paul Mahoney, the VPs of the Operations Department and Information Systems Department, reported directly to Strate, and Strate reported directly to Frank Ziegler, the Bank President.

In the latter part of 2000, the Bank hired an outside consultant, Tina Cherpes, to help improve customer services. Cherpes identified several problems at the Bank, such as unreconciled accounts and customer complaints. After identifying those problems, Cherpes was engaged by the Bank to help stabilize and reengineer the Operations Department.

Meanwhile, Strate had become pregnant. In the fall of 2000, she informed Ziegler and Jack Biggs, the Bank's Chairman of the Board, of her pregnancy. Strate was granted permission to take leave under the Family Medical Leave Act (FMLA). She began her FMLA leave on April 12, 2001. Before Strate went on leave, she expressed concern to Ziegler about her job. He told her "that she had been a good employee, that he had no reason to expect her job would not be there, and she should not be concerned." Id. at 5.

On April 20, 2001, Strate gave birth to her third child, who was born with Down's Syndrome. On April 24, 2001, Strate enrolled her newborn child in the Bank's group healthcare plan. On June 3, 2001, she notified Ziegler that she planned to return to work on July 2, 2001, but that she might require surgery due to her recent delivery.

On June 11, 2001, while Strate was on maternity leave, Ziegler discharged Green, purportedly in response to continuing problems within the Operations Department. Thereafter, the Operations Department was run by three people: Cherpes, the outside consultant; Sarina Strack, a bank employee; and another bank employee. The three worked under the direction of an executive steering committee at the Bank.

Around the same time, while Strate was still on leave for the birth of her child, Ziegler decided to eliminate her position. As the district court explained:

> Ziegler concluded that the Operations and Information Systems Departments' leaders should report directly to him and become part of [the Bank's] Executive Management Team so as to improve communications. He determined that it was in [the Bank's] best interest to eliminate the layer of supervision or management between him and those two departments' VPs. As part of the stabilization project, the Operations Department was renamed "Customer Support Department." The VP of Customer Support would report directly to Ziegler. He decided to eliminate [Strate's] position and so informed Biggs.

Id. at 6.

Thereafter, following a meeting between Ziegler and Biggs, Biggs's assistant, Darla Clenin, overheard Biggs on the telephone saying, among other things, "Frank was going to handle it," "there's no more room in the barn for her," and "conscious of the disability." Id.

On June 25, 2001, the Bank externally advertised that it was looking to hire a VP of Customer Support.[2] The job opening was not posted internally. On June 29, 2001, Biggs sent an e-mail message to one of the Bank's board members discussing the management restructuring plan and favorably noting Strack's interest in the newly-created VP of Customer Support position. Biggs indicated that promoting Strack, while eliminating Strate, would result in a net savings for the Bank, even if Strack were given a raise. He further stated:

---

[2]Because the Operations Department was in the process of being renamed the Customer Support Department, this newly-created position was interchangeably referred to as VP of Operations or VP of Customer Support. For the sake of clarity and consistency, the position is referred to herein as VP of Customer Support.

Janet Strate will return Monday. Frank is prepared to deal with this situation and advise Janet that her position is no longer here and that there is not a role that suits her given the directions now being taken. We are prepared to give her a fair exit and will counsel her accordingly. Frank is giving his approach serious thought so that we do not get in a sticky situation.

Id. at 7 (quoting Plaintiff's Deposition Exh. 3) (located in Joint Appendix (Vol. II) at 279).

When Strate returned to work on July 2, 2001, Ziegler told her that her position had been eliminated due to restructuring. He also told her that she could apply for the newly-created VP of Customer Support position, but the selection committee did not view her as a viable candidate for the job. He further stated that, if she did not apply for the new position, she could have a severance package which included eleven months of salary plus six months of continued healthcare coverage. Strate did not apply for the VP of Customer Support position and declined the severance package offered by Ziegler. Id. at 7-8.

The Bank interviewed two external candidates and one internal candidate, Strack, for the VP of Customer Support position. On July 18, 2001, Strack was promoted to that position, and, on November 20, 2001, she was promoted to Senior VP of Customer Service.

Strate received Right to Sue letters from the EEOC and the Missouri Commission on Human Rights on January 9, 2002, and February 1, 2002, respectively. On May 31, 2002, Strate filed the present action in the district court claiming, among other things, that the Bank's elimination of her position as Executive VP of Operations and Information Systems, which effectively terminated her employment, was motivated by discrimination or retaliation based upon her relationship or association with a disabled person, her newborn child, in violation of

the ADA, the MHRA, and ERISA. The Bank moved for summary judgment. Shortly thereafter, the district court denied the Bank's summary judgment motion without prejudice and ordered the parties to file supplemental briefs addressing the impact of the Supreme Court's then-recent decision in <u>Desert Palace</u>.

*Desert Palace*

In <u>Desert Palace</u>, the plaintiff sued her former employer in federal court alleging gender discrimination and sexual harassment in violation of Title VII. The action proceeded to trial only on the gender discrimination claim. At trial, notwithstanding the defendant's objection based upon the plaintiff's lack of direct evidence, the district court gave a mixed motive jury instruction incorporating legal standards established by Congress in the 1991 Civil Rights Act,[3] which had been

---

[3]The Civil Rights Act of 1991 established the following pertinent standards:

> Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

42 U.S.C. § 2000e-2(m).

> (B) On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible factor, the court –

> > (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and

enacted in response to the Supreme Court's decision in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989) (<u>Price Waterhouse</u>). Regarding liability, the district court noted that the jury had heard evidence of both lawful and unlawful motives for the defendant's adverse employment action and instructed the jury that the plaintiff was entitled to a favorable verdict on liability if the protected characteristic (gender) was a motivating factor in the adverse employment action, regardless of whether other lawful motives also played a role. On damages, the district court instructed the jury that the plaintiff was entitled to damages even if the adverse action was motivated by both gender and a lawful reason, <u>unless</u> the defendant had proven by a preponderance of the evidence that it would have taken the same adverse action if plaintiff's gender had played no role in the employment decision. <u>Desert Palace</u>, 539 U.S. at 96-97. The jury rendered a verdict for the plaintiff and awarded her back pay, compensatory damages, and punitive damages. Judgment was entered accordingly. After the district court's judgment was affirmed by the Ninth Circuit *en banc*, the Supreme Court granted review to consider the following limited issue: "whether a plaintiff must present direct evidence of discrimination in order to obtain a mixed motive instruction under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991." <u>Id.</u> at 92. The Supreme Court held that direct evidence is not required in order for a mixed motive jury instruction to be given.[4] The Court noted,

> (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

<u>Id.</u> § 2000e-5(g)(2)(B).

[4]Historically, a plaintiff could prove unlawful employment discrimination at trial indirectly using circumstantial evidence under the pretext analysis of <u>McDonell Douglas v. Green</u>, 411 U.S. 792 (1973) (<u>McDonnell Douglas</u>), or directly using direct evidence under the mixed motive analysis of <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989) (<u>Price Waterhouse</u>). In other words, before the Supreme Court rendered its decision in <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003) (<u>Desert Palace</u>), <u>McDonnell Douglas</u> and <u>Price Waterhouse</u> were viewed as providing *alternative*

among other things, that "Section 2000e-2(m) unambiguously states that a plaintiff need only 'demonstrat[e]' that an employer used a forbidden consideration with respect to 'any employment practice.' On its face, the statute does not mention, much less require, that a plaintiff make a heightened showing through direct evidence." Id. at 98-99.

*Application of Desert Palace*

In the present case, the parties addressed the impact of Desert Palace in legal memoranda submitted in connection with a "renewed and supplemental" motion for summary judgment filed by the Bank. The Bank's renewed motion asserted that, notwithstanding the Supreme Court's decision in Desert Palace, the burden-shifting analysis set forth in McDonnell Douglas, 411 U.S. at 802-05, continued to apply to Strate's employment discrimination claims, and that, upon application of that analysis, the Bank was entitled to judgment as a matter of law because Strate had failed to create a genuine issue of fact as to whether a protected characteristic or activity, such as her association with her disabled newborn child or her enrollment of the child in the Bank's group healthcare plan, motivated the Bank's decision to eliminate her position.

Upon consideration of the Bank's renewed motion for summary judgment, the district court correctly noted that the Eighth Circuit, in the aftermath of Desert Palace,

---

methods for proving discrimination, depending on the nature of the plaintiff's evidence. See, e.g., Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir.) (en banc) ("We have interpreted [Price Waterhouse] to require a plaintiff to present, at a minimum, some direct evidence of discriminatory motive. Because [the plaintiff] relied entirely on circumstantial evidence to establish the existence of a discriminatory motive . . ., the district court was correct in reviewing [the plaintiff's] claim solely under the McDonnell Douglas framework.") (internal citations omitted), cert. denied, 528 U.S. 818 (1999).

has continued to apply the burden-shifting framework established in <u>McDonnell Douglas</u> to determine whether or not a claim of unlawful employment discrimination can survive a defendant's motion for summary judgment. Slip op. at 16. The district court concluded that the <u>McDonnell Douglas</u> analysis "governs [Strate's] various claims," and proceeded to analyze Strate's claims accordingly. <u>Id.</u> at 19.

The Bank did not dispute, and the district court assumed, that Strate had made a *prima facie* case on each of her claims. To meet its sequential burden of production, the Bank asserted that it had eliminated Strate's position as part of a reorganization of its management structure. The district court then proceeded to consider whether that stated explanation was a pretext for unlawful discrimination or retaliation. The district court concluded that the evidence in the record, whether direct or circumstantial, did not create any genuine issue of fact as to whether Strate was terminated as a result of her association with her disabled child or the impact of the child's birth on her healthcare benefits. Slip op. at 23. Accordingly, the district court, without reaching the Bank's other arguments,[5] granted the Bank's motion for summary judgment and dismissed the action with prejudice. This appeal followed.

---

[5]In its renewed motion for summary judgment, the Bank also maintained that, even if there were a genuine issue of fact regarding unlawful discrimination, it was nevertheless beyond genuine dispute that Ziegler would have made the "same decision" for lawful reasons, irrespective of any unlawful motivation. The Bank thus argued in the alternative that it was at least entitled to summary judgment on the issues of back pay, emotional distress, and punitive damages, under 42 U.S.C. §§ 2000e-2(m) and 2000e-5(g)(2)(b). The Bank additionally disputed the applicability of §§ 2000e-2(m) and 2000e-5(g)(2)(b) to Strate's ERISA claim. <u>See</u> District Court Record (Filing #47) (Memorandum in Support of Defendant's Renewed and Supplemental Motion for Summary Judgment at 20-21, 15 & n.3, 16). These issues are not before us in the present appeal.

## Discussion

Strate first argues that "[t]he district court's fundamental error was its failure to recognize that <u>Desert Palace</u> **modified** the familiar three-stage test announced in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973)."  Brief for Appellant at 12 (emphasis original).  She explains her argument as follows:

> The district court held that, to avoid summary judgment, plaintiff had to prove that the Bank's "proffered explanation is both incorrect and that discrimination is the true explanation for the adverse employment action." The district court also held that plaintiff had failed to prove that the Bank's proffered reason "was pretextual."
>
> Under <u>Desert Palace</u>, plaintiff only needs to offer evidence that discrimination was "a" motivating factor.  She does not need to prove that the Bank's proffered reason was entirely untrue, merely that it was not the sole motivating factor in her discharge.

<u>Id.</u> at 15-16 (citations to the district court order omitted).

At the outset, we note that, in the context of the <u>McDonnell Douglas</u> analytical framework, a court's use of the words "pretext," "pretextual" or similar terminology, often must be read as shorthand for indicating that a defendant's proffered discriminatory explanation for adverse employment action is a pretext *for unlawful discrimination*, not that it is merely false in some way.  <u>See, e.g.</u>, <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 516 (1993) ("in our view 'pretext' means 'pretext for discrimination'").  With that assumption in mind, we perceive no error in the district court's statement of the basic <u>McDonnell Douglas</u> burden-shifting framework.  We also note, at the outset, that the district court was correct in assuming that this burden-shifting approach may be applied to claims under the ADA, the MHRA, and ERISA.  <u>See, e.g.</u> <u>Epps v. City of Pine Lawn</u>, 353 F.3d 588, 591 (8th Cir. 2003) (applying <u>McDonnell Douglas</u> burden-shifting analysis to claims under the ADA and the

MHRA); Rath v. Selection Research, Inc., 978 F.2d 1087, 1089-90 (8th Cir. 1992) (applying McDonnell Douglas burden-shifting analysis to claim under ERISA). Moreover, as explained below, the district court did not err in concluding that Desert Palace has not changed our summary judgment standards under the McDonnell Douglas paradigm.

As described above, Desert Palace was a post-trial appeal. It addressed issues that arose in proceedings occurring after the plaintiff had presumably already established genuine controversy as to whether the adverse employment action was motivated, at least in part, by discrimination based on a protected characteristic. By contrast, at the summary judgment stage, the controlling issue ordinarily is whether or not there exists a genuine issue of fact regarding *any* discriminatory motive. In that sense, Desert Palace really has no direct impact in the summary judgment context. See, e.g., Griffith v. City of Des Moines, 387 F.3d 733, 735-36 & n.2 (8th Cir. 2004) ("Desert Palace had *no* impact on prior Eighth Circuit summary judgment decisions.").

In any event, our cases utilizing the McDonnell Douglas methodology at the summary judgment stage are, in principle, consistent with Desert Palace. Contrary to Strate's apparent understanding of the law, we have long recognized that a genuine issue of fact regarding unlawful employment discrimination may exist notwithstanding the plaintiff's inability to directly disprove the defendant's proffered reason for the adverse employment action. See, e.g., O'Bryan v. KTIV Television, 64 F.3d 1188, 1192 (8th Cir. 1995) ("It appears that the district court was under the impression that, in order to survive defendants' motion for summary judgment, plaintiff could only rely upon evidence that directly tended to disprove the exact reason stated by defendants for terminating him. . . . We have specifically rejected such a narrow approach to the plaintiff's burden of proof, when resisting a defendant's motion for summary judgment, in order to establish a genuine issue of fact as to pretext and the ultimate issue of intentional discrimination."); Davenport

-11-

v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 n.8 (8ᵗʰ Cir. 1994) (Davenport) ("[T]he standard for plaintiff to survive summary judgment required only that plaintiff adduce enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence did not directly contradict or disprove defendant's articulated reasons for its actions.").

As we have often stated, the focus of inquiry at the summary judgment stage "always remains on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of [the protected characteristic]." Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8ᵗʰ Cir. 1996). This approach "is consistent with the Supreme Court's . . . decision in St. Mary's Honor Ctr. v. Hicks, [509 U.S. 502] (1993), where the Supreme Court held that a plaintiff's proof of pretext is relevant to, but not dispositive of, the ultimate issue of intentional discrimination." Davenport, 30 F.3d at 945 n.8; accord McDonnell Douglas, 411 U.S. at 805 (holding that, at the pretext stage, the plaintiff "must be given a full and fair opportunity to demonstrate by competent evidence that the *presumptively valid reasons* for his rejection were in fact a coverup for a racially discriminatory decision") (emphasis added). Thus, the Supreme Court's decision in Desert Palace, to the extent relevant, merely reaffirms our prior holdings by indicating that a plaintiff bringing an employment discrimination claim may succeed in resisting a motion for summary judgment where the evidence, direct or circumstantial, establishes a genuine issue of fact regarding an unlawful motivation for the adverse employment action (i.e., a motivation based upon a protected characteristic), even though the plaintiff may not be able to create genuine doubt as to the truthfulness of a different, yet lawful, motivation.[6]

---

[6]See generally Julie Tang & Hon. Theodore McMillian, Eighth Circuit Employment Discrimination Law: *Hicks* and Its Impact on Summary Judgment, 42 St. Louis U. L.J. 519, 527-29 (1997) (discussing the Eighth Circuit summary judgment standard).

In the present case, the district court did not ultimately focus on the truthfulness of the Bank's claim that it was undergoing a bona fide reorganization. Rather, the district court ultimately focused on whether the evidence in the record created a genuine issue of fact concerning unlawful discrimination based upon a protected characteristic. See slip op. at 23. Therefore, contrary to Strate's first argument on appeal, we hold that the district court did not apply an incorrect legal standard in the present case.

We now review *de novo* the district court's summary judgment decision within the <u>McDonnell Douglas</u> burden-shifting framework. On summary judgment, the question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).

The district court assumed, and the Bank did not dispute, that Strate had made a *prima facie* case of discrimination based upon her association with her disabled

child, in violation of the ADA, the MHRA, and ERISA.[7]  Upon *de novo* review, we

---

[7]The ADA provides in relevant part:

> As used in subsection (a) of this section, the term "discriminate" includes–
>
> . . . .
>
> (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association[.]

42 U.S.C. § 12112(b)(4).

The MHRA provides in relevant part:

> It shall be an unlawful practice:
>
> . . . .
>
> (1) To discriminate in any manner against any other person because of such person's association with any person protected by this chapter.

 Mo.Rev.Stat. § 213.070(4).

ERISA provides in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]

29 U.S.C. § 1140.

conclude that Strate met her *prima facie* burden on each of these claims.[8]

The Bank came forward with a nondiscriminatory reason for terminating Strate: her position was eliminated as part of a reorganization of the Bank's management structure. Therefore, we now address *de novo* whether, in consideration of this explanation, and viewing all the evidence in the light most favorable to Strate, there is a genuine issue of material fact concerning the Bank's motivation for eliminating Strate's position and effectively terminating her. If there is genuine factual controversy regarding whether the Bank was motivated, in whole or in part, by Strate's association with her disabled newborn child, then summary judgment was improperly granted for the Bank.

The evidence establishes that Strate gave birth to her disabled child on April 20, 2001, enrolled the child in the Bank's group healthcare plan on April 24, 2001, and was notified that her job had been eliminated on July 2, 2001, approximately two months later. It is undisputed that Ziegler knew about the child's disability when he made the decision to eliminate her job. On rare occasions, a close temporal connection between a protected activity and an adverse employment action may be sufficient to create an inference of retaliation. See,e.g., <u>Bassett v. City of Minneapolis</u>, 211 F.3d 1097, 1105-06 (8th Cir. 2000) (holding that a temporal link between protected activity and an adverse employment action may, in some cases, be

[8]Regarding the *prima facie* requirement of an adverse employment action, we note that Strate was effectively terminated on July 2, 2002, when she was told that her position had been eliminated. Strate was no less terminated merely because she was also told that she could *apply* for the newly-created VP of Customer Support position. As a general matter, such a gesture is materially different from a change in position or reappointment in which the same terms and conditions of employment are retained. Moreover, in this particular case, the evidence indicates that this was an empty gesture – at the same time that Ziegler told her she could apply for the VP of Customer Support position, he also told her that she was not considered to be a viable candidate for the job.

sufficient to create an inference of retaliation) (citing cases). It follows that close temporal proximity between an employer's discovery of a protected characteristic and an adverse employment action may, on rare occasions, suffice to create an inference of discrimination. However, "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir.) (en banc), cert. denied, 528 U.S. 818 (1999).

In the present case, there is more than mere temporal proximity between the birth of Strate's disabled child (and Ziegler's knowledge thereof) and the decision to eliminate her position within the Bank. In the present case, Strate had an eleven-year employment history with the Bank, during which she was promoted several times and received numerous salary increases. She received consistently favorable evaluations over the years, showing no employment problems whatsoever. Ziegler admitted in his deposition that, shortly before Strate went on leave in April 2001, he indicated to her that he was pleased with her work for the Bank and that she had no reason to worry about her job security. Joint Appendix (Vol. I) at 180-81 (Deposition of Frank Ziegler). Ziegler also testified in his deposition that, at the time he made the decision to eliminate Strate's position, he had no job performance issues related strictly to Strate. Id. at 151.

We recognize that evidence of a strong employment history will not alone create a genuine issue of fact regarding pretext and discrimination. However, such circumstantial evidence can be relevant when considering whether the record as a whole establishes a genuine issue of material fact. Cf. Hase v. Missouri Div. of Employment Sec., 972 F.2d 893, 897 (8th Cir. 1992) ("Evidence of Plaintiff's rank, her higher examination and performance ratings, and her years of experience, when compared with [the hiree's] supervisory experience and job recommendations, could reasonably lead a trier of fact to infer that Defendants' proffered reasons were pretextual."), cert. denied, 508 U.S. 906 (1993). In the present case, Strate's

-16-

apparently unblemished employment history with the Bank, spanning more than a decade of work, casts genuine doubt upon the Bank's stated reason for terminating her.

Moreover, evidence concerning Strate's objective qualifications for the VP of Customer Support position and the manner in which the Bank filled that new position is also relevant to our analysis. According to the Bank itself, the reorganization on which it justifies the elimination of Strate's job as Executive VP of Consumer Services simultaneously involved the creation of the new VP of Customer Support position. Strate admittedly did not apply for the new position, but the evidence indicates that, when Ziegler informed her that she could apply, he also told her that she was considered not to be a viable candidate. Strate's evidence further establishes that, while she may not have been viewed as the best candidate for the VP of Customer Support position, she certainly was qualified for the job, having already performed all or most of the very same tasks that the new position entailed. Nevertheless, she was told that she was viewed as a non-viable candidate, and no explanation for that view was given.

On appeal, the Bank argues that evidence related to the new VP of Customer Support position is irrelevant to the issue of pretext because its articulated business reason for terminating Strate referred only to the elimination of her old position, not the denial of the new position. The Bank argues: "Casting doubt on some collateral action of an employer does not prove pretext. The articulated business reason must be the subject of the attack if pretext is to be shown. Strate's pretext burden is to 'squarely rebut the articulated reason for [the elimination of her position].'" Brief for Appellee at 38 (quoting Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 349 (7th Cir. 1997)). The Bank continues: "She must present facts to rebut each and every legitimate, non-discriminatory reason advanced to survive summary judgment." Id. (citing Clay v. Holy Cross Hosp., 253 F.3d 1000, 1007 (7th Cir. 2001)).

Contrary to the Bank's argument, which is based upon Seventh Circuit case law, the applicable standard in our circuit on summary judgment (as discussed above) "require[s] only that [the] plaintiff adduce enough admissible evidence to raise a genuine doubt as to the legitimacy of the defendant's motive, *even if that evidence [does] not directly contradict or disprove [the] defendant's articulated reasons for its actions*." Davenport, 30 F.3d at 945 n.8 (emphasis added). In the present case, the evidence showing that Strate was objectively qualified for the new VP of Customer Support position, but was written off from the start as a non-viable candidate for the job, certainly adds doubt regarding to the legitimacy of the Bank's motives for its actions.

In view of the evidence establishing a close temporal proximity between the birth of Strate's disabled child and her termination, combined with the evidence indicating that she maintained a stellar employment record at the Bank over an eleven-year period leading up to the child's birth and was objectively qualified for the new the VP of Customer Support position but was dismissed from the start as a non-viable candidate, we hold that a reasonable fact finder could conclude that Strate's association with her disabled newborn child was a motivating factor in the decision to terminate her.[9] Insofar as the district court's summary judgment order is contrary to our holding, it is reversed.

---

[9]We do not base this holding on evidence in the record merely showing that decision makers at the Bank were aware of the child's disability or that they desired to handle Strate's termination carefully.

## Conclusion

For the reasons stated, the order of the district court granting summary judgment for the Bank is affirmed in part and reversed in part. The case is remanded to the district court for further proceedings consistent with this opinion.

_____