# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2817

_____

Olen E. Gibson

*Plaintiff - Appellant*

v.

Timothy F. Geithner, Secretary of the Treasury

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 13, 2014
Filed: January 9, 2015

_____

Before BYE, SHEPHERD, and KELLY, Circuit Judges.

_____

BYE, Circuit Judge.

Olen Gibson brought this employment discrimination case claiming racial and sexual harassment and retaliation against his former employer, the Internal Revenue

Service ("IRS"). The district court[1] granted summary judgment to the IRS on all claims. Gibson now appeals on the retaliation claim. We affirm.

I

Gibson is an African-American male who was hired by the IRS on January 1, 2008, as a full-time seasonal tax examiner in Kansas City, Missouri. Gibson's employment with the IRS was subject to the completion of a one-year probationary period.

In his job, Gibson coded and edited tax returns at a desk. Gibson would retrieve a bundle of tax returns from a bucket in a truck, return to his desk to code and edit the bundle, and then return the tax returns to the same location. The IRS monitored and recorded which employee coded and edited each bundle of tax returns. Once all the tax returns in a given truck had been coded and edited, quality assurance examiners would randomly review the work of all probationary employees. It was common for these quality assurance examiners to select five to ten tax returns from randomly selected buckets in each truck. If needed, a 100% review of an employee's work might occur.

Gibson's work leader was Caroline Jennings, an African-American female. Gibson's first-level supervisor was Lead Tax Examiner Felecia Butler, an African-American female working as a temporary manager. Gibson's second-level supervisor was Deputy Manager Vanessa Hunter, an African-American female. Gibson's third-level supervisor was Operations Manager Donna Vermillion, a Caucasian female. In his unit, supervised by Butler, there were thirty-two employees, eighteen of whom were probationary employees like Gibson. Of these eighteen probationary

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

employees, four were African-Americans, twelve were Caucasian, and two were Hispanic. Six were female and twelve were male. Gibson was the only African-American male probationary employee in his unit.

In late March 2008, Butler was told by one of Gibson's co-workers that Gibson had recommended to her she could increase her productivity by not editing the entire bundle of tax returns. Based on this information, Butler began watching Gibson more closely and noticed Gibson did not appear to be editing entire bundles. Butler observed Gibson methodically arrange his work and only edit the beginning and end of the bundle. Butler directed Jennings, Gibson's work leader, to review Gibson's work more closely.

Thereafter on March 24, 2008, Butler verbally counseled Gibson regarding a bundle claimed as his own work, but actually completed by someone else. In a follow-up memorandum, Butler noted the mis-labeled bundle, Gibson recording working hours he was not present, and Gibson improperly altering a government document. Butler prohibited Gibson from working overtime. On the same day, Gibson responded to Butler's memorandum maintaining he made no intentional falsifications and his actions were innocent mistakes. Gibson also claimed he was being unfairly targeted by Butler and asked to be represented by his local union.

On March 25, Butler made a finding of three instances where Gibson claimed credit for editing documents which did not exist on February 28 and March 7, 2008. On March 31, Gibson sent a memo to his local union representative, Deandre Jones, stating Butler was harassing and retaliating against him by singling him out for unfavorable and disparate treatment. Thereafter, Gibson's work product was subject to 100% review, which revealed his error rate was unacceptably high.

On April 17, Jones and Gibson met with Vanessa Hunter about Butler's March 24 memo. Gibson denied all wrongdoing. On April 18, Hunter authorized Butler to

meet with Gibson and advise Gibson he would be removed from his position unless he chose to resign. Butler did so and Gibson declined to resign. Butler did not have authorization or authority to terminate Gibson and he remained employed. The same day, Operations Manager Donna Vermillion contacted Labor Relations Specialist Donna Smith regarding Gibson. Vermillion was told Gibson should be terminated.

On April 21, Gibson delivered a letter to Jones with the subject line "Sexual Harassment, Retaliation, Harassment, and Creating a Hostile Environment, by Manager Ms. Felecia Butler." The letter alleged, in part, Butler would constantly tell Gibson how good Butler looks because she works out at the gym, Butler would put down other black women at the IRS for being overweight, and Butler would compare her weight to the weight of other black women. Vermillion received the letter and asked Hunter to investigate the allegations. Hunter reported the allegations were unfounded.

After a briefing by Butler on Gibson's work product and workplace activities, Vermillion terminated Gibson on April 25, based on Gibson's failure to attain a fully successful level of performance during his probationary period. Gibson wrote a note complaining he had not been given a second opportunity to resign. Gibson also submitted a letter to Hunter entitled "Sexual Harassment, Retaliation, Harassment, and a Hostile Environment, by Ms. Butler." This letter alleged the same harassment as the April 21 letter, and additionally alleged that on April 24, 2008, as Gibson turned around after picking up a bundle of returns, he bumped into Butler who was standing behind him.

On December 8, 2010, Gibson commenced this lawsuit in the federal district court, alleging the IRS subjected him to a racially and sexually hostile work environment, discriminatory termination, and retaliation in violation of Title VII of the Civil Rights Act of 1964. The IRS moved for summary judgment on all of Gibson's claims. In his opposition to the motion, Gibson abandoned and dismissed

his hostile work environment claims and proceeded on only his race and sex discrimination claims and retaliation claims with regards to his termination. The district court granted the IRS summary judgment on all remaining claims. Gibson now appeals, challenging only the district court's ruling as to the retaliatory termination claim.

## II

"We review a district court's decision to grant a motion for summary judgment *de novo*, applying the same standards for summary judgment as the district court." Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 514 (8th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering summary judgment motions, the burden of demonstrating there are no genuine issues of material fact rests on the moving party, and we review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party. Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 680 (8th Cir. 2012). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Ricci v. DeStefano, 557 U.S. 557, 586 (2009)).[2]

To survive a motion for summary judgment, Gibson must show a *prima facie* case of retaliation and must show the proffered legitimate non-retaliatory reasons for his termination were pretextual. Because Gibson lacks direct evidence of retaliation,

---

[2]We note that for the purposes of this appeal, the factual record before this court is the Defendant's Statement of Undisputed Facts. The district court, due to Gibson's filing of his opposition to defendant's motion for summary judgment twelve minutes late, accepted as uncontroverted the defendant's version of the facts. Gibson has not appealed this decision by the district court.

the burden-shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973) applies. Under <u>McDonnell Douglas</u>, Gibson bears the initial burden of making a *prima facie* showing of retaliation. To establish a *prima facie* retaliation claim under Title VII, an employee must show: (1) he engaged in protected conduct; (2) a reasonable employee would have found the retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct. <u>Pye v. Nu Aire, Inc.</u>, 641 F.3d 1011, 1021 (8th Cir. 2011). If Gibson makes this *prima facie* showing, the burden shifts to the IRS to articulate a legitimate, non-retaliatory reason for the adverse action. Once the IRS does so, the burden shifts back to Gibson to put forward evidence of pretext. See <u>McDonnell Douglas</u>, 411 U.S. at 802.

Gibson first argues the district court erred in analyzing his *prima facie* case of retaliation by failing to find causation between his statutorily protected activity and his termination. Gibson correctly notes the threshold of proof necessary to establish a *prima facie* case is minimal. <u>Young v. Warner-Jenkinson Co.</u>, 152 F.3d 1018, 1022 (8th Cir. 1998). We need not address Gibson's arguments concerning his *prima facie* case because even if we assume Gibson has established a *prima facie* case of retaliation, he has failed to establish pretext. See <u>Logan v. Liberty Healthcare Corp.</u>, 416 F.3d 877, 881-84 (8th Cir. 2005) (declining to decide whether plaintiff had established a *prima facie* case of retaliation and affirming summary judgment based on a finding of no pretext).

Proof of pretext "requires more substantial evidence" than a *prima facie* case "because unlike evidence establishing a *prima facie* case, evidence of pretext . . . [and retaliation] is viewed in light of the employer's justification." <u>Logan</u>, 416 F.3d at 881 (alterations in original) (internal quotation marks omitted). There are at least two routes for demonstrating a material question of fact as to pretext: first, a plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact; or, second, a plaintiff can directly persuade the court that a prohibited reason more likely

motivated the employer. Gibson v. Am. Greetings Corp., 670 F.3d 844, 854 (8th Cir. 2012). "Pretext . . . must be read as shorthand for indicating that a defendant's proffered [retaliatory] explanation for adverse employment action is a pretext for *unlawful [retaliation]*, not that it is merely false in some way." Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1017 (8th Cir. 2005).

The IRS offered poor job performance as the reason for Gibson's termination. The IRS did not terminate Gibson for any alleged cheating, but rather based on his failure "to attain a fully successful level of performance." J.A. at 49. The termination letter noted reviews revealed Gibson's "work product contain[ed] more than 50% of the documents processed incorrectly." Id. Gibson argues this explanation has no basis in fact and Gibson argues retaliation more likely motivated his termination. See Gibson, 670 F.3d at 854 (discussing ways to demonstrate pretext).

First, Gibson argues the IRS did not actually have concerns about Gibson's performance. Gibson alleges Hunter agreed to remove the March 24 memo from Gibson's personnel file. According to Gibson, this evidence demonstrates the IRS did not, in fact, have concerns with Gibson's performance. This evidence, however, does not demonstrate Gibson was performing at a satisfactory level. Gibson claims the allegations against him must be taken as pretext because they were inconsistent across time. Gibson takes as evidence of pretext that supervisors discussed his cheating, but he was terminated due to ineffectiveness. While shifting justifications can be used to show pretext, Gibson has failed to show either explanation is false and has failed to show the justification actually shifted. The IRS has demonstrated there were valid concerns about both Gibson's cheating and his completed work product. Merely knowing the IRS had two concerns and only listed one in Gibson's termination letter is not enough to find pretext based on shifting explanation. Gibson also cannot show pretext based on the IRS's allegedly-false explanation for termination. See Gibson, 670 F.3d at 854.

Second, Gibson argues retaliation was more likely the motivation for his termination.  In support of this contention, Gibson notes the IRS never disciplined the individuals he filed complaints about.  The IRS, however, has put forward evidence showing an investigation was conducted and found the allegations were unfounded.  Gibson has not shown actual sexual or racial harassment ever occurred and therefore cannot show pretext based on the IRS's failure to discipline based on the alleged wrong-doing.

Arguing Vermillion was improperly influenced by Butler, Gibson asks this court to apply the cat's paw theory of proving discriminatory intent.  See Staub v. Proctor Hosp., 562 U.S. 411, 131 S.Ct. 1186, 1190 (2011) (noting a cat's paw case is where a plaintiff seeks "to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision").  We need not determine whether this case is proper for the application of cat's law liability because Gibson failed to put forward any evidence that Butler influenced Vermillion or that Butler's alleged influence was retaliatory in nature.  See Richardson v. Sugg, 448 F.3d 1046, 1060 (8th Cir. 2006).

Gibson also asserts the short time period between Gibson's allegation of harassment and his termination is evidence of wrongdoing by the IRS.  Proximity alone can be enough to establish causation for a *prima facie* case.  Smith v. Allen Health Sys., Inc., 302 F.3d 827, 833 (8th Cir. 2002) ("These two events are extremely close in time and we conclude under our precedent this is sufficient, but barely so, to establish causation, completing [plaintiff's] *prima facie* case.").  However, proximity alone is insufficient to establish pretext.  Sherman v. Runyon, 235 F.3d 406, 410 (8th Cir. 2000) ("[T]iming on its own is usually not sufficient to show that an employer's non-discriminatory [or non-retaliatory] reason for discharge is merely pretext.").  Rather, we evaluate "the timing of the discharge . . . in light of other evidence, or lack of other evidence, in the record."  Id.  The record before us shows no other evidence

which tends to support a finding of pretext. Therefore, the close timeframe between Gibson's protected conduct and his termination is insufficient to show pretext.

Finally, we note Gibson's work performance and adherence to proper procedure were concerns before Gibson filed his first harassment complaint. Gibson has put forward no evidence demonstrating the IRS was motivated by retaliation and Gibson was not insulated from termination merely because he complained of harassment. Hervey v. Cnty. of Koochining, 527 F.3d 711, 723 (8th Cir. 2008) ("Insubordinate employees may not insulate themselves from discipline by announcing an intention to claim discrimination just before the employer takes action."). Gibson has failed to demonstrate a material question of fact remains as to pretext and summary judgment was appropriate.

III

Accordingly, we affirm the judgment.

_____