# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 21-3376

———————————————

Christopher Thompson

*Plaintiff - Appellant*

v.

University of Arkansas Board of Trustees and Raymond Ottman

*Defendant – Appellee*

——————————

Appeal from United States District Court
for the Western District of Arkansas

——————————

Submitted: September 22, 2022
Filed: November 10, 2022

——————————

Before GRUENDER, SHEPHERD, and ERICKSON, Circuit Judges.

——————————

GRUENDER, Circuit Judge.

Christopher Thompson sued the University of Arkansas Board of Trustees and campus police chief Raymond Ottman, raising employment discrimination related

claims, including retaliation. The district court[1] granted Ottman summary judgment. We affirm.

## I.

Thompson is African-American. He began working for the University of Arkansas at Fort Smith Police Department ("UAFS PD") in 2012. Ottman is Caucasian. He was hired as UAFS PD Chief in 2015. Thompson alleges that Ottman discriminated against him and mistreated him. On one occasion, Ottman remarked that Thompson resembled George Jefferson, an African-American character from the 1970s and 1980s television shows *All in the Family* and *The Jeffersons*. Other incidents included Ottman insinuating that Thompson should resign and try to get a job with the local police department (as opposed to the campus police department), Ottman refusing to give Thompson holidays off, and Ottman repeatedly placing Thompson on night shifts despite his requests for greater flexibility. Thompson verbally raised these issues in an August 28, 2017 meeting with Ottman's supervisor, Brad Sheriff. Sheriff notified Ottman that Thompson had complained of scheduling issues and unfair treatment during a regularly scheduled meeting that day. Sheriff did not characterize Thompson's complaints as related to discrimination or specifically raise Thompson's complaint about the George Jefferson remark.

On August 24, a few days before Thompson's meeting with Sheriff, Thompson responded to a call from a resident assistant reporting an intoxicated man in a dormitory room who was passed out and foaming at the mouth. Two female students were also in the room. Thompson proceeded to question the students outside the room for about twenty minutes. Thompson never attempted to check the man's vital signs, position his body in a manner that minimized choking risk, or administer other first aid. At one point, the resident assistant asked if Thompson was going to attend to the man. Thompson simply responded that paramedics were

---

[1] The Honorable P.K. Holmes III, United States District Judge for the Western District of Arkansas.

on the way. The paramedics eventually arrived and transported the man to a local hospital.

A few days later, on August 29, the resident assistant met with Ottman to express concerns about Thompson's response to the incident. Ottman reviewed Thompson's body-camera footage and determined that Thompson's response warranted termination of his employment. Sheriff and Thompson's direct supervisor, Lieutenant Tiffany Johnson, also reviewed the video. Johnson was alarmed by Thompson's failure to follow proper first-responder procedures. Sheriff agreed with Ottman that dismissal was warranted. On September 1, 2017, Thompson was dismissed for cause. The dismissal letter focused on the August 24 incident, noting that Thompson "failed to approach or attend to the victim," "check for a medical alert ID," "check vital signs," and "provide first aid."

Thompson believes he was terminated wrongfully. Thompson sued the Board of Trustees and Ottman in September 2020. He asserted claims of race discrimination, retaliation, hostile work environment, and age discrimination against both defendants. The district court dismissed all claims except for the claims of race discrimination, hostile work environment, and retaliation against Ottman brought under 42 U.S.C. § 1981. Ottman later moved for summary judgment on these outstanding claims. The district court granted his motion. Thompson appeals.

## II.

Thompson argues only that the district court erred by granting summary judgment on his retaliation claim. We review the grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in his favor. *Onyiah v. St. Cloud State Univ.*, 5 F.4th 926, 930 (8th Cir. 2021). We affirm because there are no genuine disputes of material fact that would allow a reasonable jury to find in favor of Thompson. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

We analyze § 1981 retaliation claims under the same *McDonnell Douglas* burden-shifting framework used for Title VII claims. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 n.2 (8th Cir. 2010). If the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to identify a legitimate, non-retaliatory reason for the dismissal (or other adverse employment action). *Onyiah*, 5 F.4th at 930. If the defendant identifies a legitimate reason, then the burden shifts back to the plaintiff to show that this supposedly legitimate reason was in fact pretextual. *Id.* "There are at least two routes for demonstrating a material question of fact as to pretext: first, a plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact; or, second, a plaintiff can directly persuade the court that a prohibited reason more likely motivated the employer." *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015). "In either case, the plaintiff must point to enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive." *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014) (internal quotation marks omitted).

The district court assumed without deciding that Thompson established a *prima facie* case. Nevertheless, the district court found that Ottman's reasons for Thompson's dismissal were legitimate and non-pretextual. We agree.

Thompson argues that several facts raise a genuine dispute as to whether the August 24 incident was a legitimate, non-retaliatory ground for dismissal. He identifies the following facts: (1) his discharge occurred only a few days after his complaint to Sheriff; (2) his conduct did not violate industry or university standards; (3) Ottman did not conduct a thorough investigation before dismissing him; (4) other employees were fired by Ottman for more serious misconduct; and (5) Ottman invoked changing reasons to justify his dismissal. Thompson, however, does not dispute the key facts about the August 24 incident. He does not contest that the man had vomited, passed out, and was foaming at the mouth. Nor does Thompson dispute the key facts regarding his own conduct, namely that he did not provide first aid, check vital signs, reposition, or continually observe the intoxicated man.

Thompson fails to raise a genuine doubt as to whether the August 24 incident was a legitimate basis for his dismissal. Regarding Thompson's argument that his dismissal occurred shortly after his complaint, Ottman was never informed that racial discrimination was one of Thompson's complaints, and Thompson's dismissal also took place shortly after the August 24 incident. Therefore, the proximity between the complaint and the discharge does not support an inference of pretext. *See Gibson*, 776 F.3d at 541 (holding that temporal proximity alone is insufficient to establish a genuine issue as to pretext). As to the University's disciplinary policy, that policy grants managers "a great deal of discretion" and notes that strict penalties may be warranted based on serious grounds not listed in the policy. Here, Thompson failed to adhere to his responsibilities as a first responder, putting the intoxicated man at risk of death or severe injury. He need not have violated an enumerated ground or specific law-enforcement standard to be fired under the policy. *See Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 904 (8th Cir. 2015) (holding that an employer's failure to adhere strictly to its disciplinary policy did not create a genuine dispute as to pretext when the employee did not identify evidence connecting the employer's decision to act outside of the express policy terms to discriminatory animus).

Thompson's arguments about the University's investigation, comparator employees, and Ottman's changing reasons for dismissal fare no better. The brevity of the University's investigation does not constitute evidence of pretext because the seriousness of Thompson's conduct was apparent from the body-camera footage. *See Schaffhauser*, 794 F.3d at 904; *McCullough v. Univ. of Ark.*, 559 F.3d 855, 863 (8th Cir. 2009) (noting that "the appropriate scope of investigation is a business judgment, and shortcomings in an investigation do not by themselves support an inference of discrimination."). Regarding comparators, Thompson points to no other employees who engaged in similarly dangerous conduct and were not fired. *See Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 925 (8th Cir. 2015) (noting that comparators can support an inference of discrimination only when they "were engaged in the same conduct without any mitigating or distinguishing circumstances"). Lastly, as to Ottman's shifting reasons for dismissal, Thompson

reads too much into slight differences in Ottman's explanations. Specifically, Thompson notes that the dismissal letter criticized his questioning of the students in the hallway and his failure to assist paramedics, in addition to emphasizing the risks that his conduct posed to the intoxicated man. By contrast, in response to an interrogatory requesting all reasons for Thompson's dismissal, Ottman referred only to the risks to the intoxicated man. Thompson's argument is unconvincing because the differences between the dismissal letter and Ottman's interrogatory response are minor. Like Ottman's interrogatory response, the dismissal letter primarily focuses on the risks to the intoxicated man. *See Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 835 (8th Cir. 2002) (noting that an employer's "slight elaboration" that "did not back off from the original explanation" for dismissal was not probative of pretext).

In sum, viewing the evidence in Thompson's favor, no reasonable jury could find that the August 24 incident was a pretextual ground for Ottman's dismissal.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Ottman on Thompson's § 1981 retaliation claim.

_____