# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-1440

———————

| | |
|---|---|
| Jeanette Jackson, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Arkansas. |
| United Parcel Service, Inc., | * |
| | * |
| Appellee. | * |

———————

Submitted: September 20, 2010
Filed: July 5, 2011

———————

Before GRUENDER, BRIGHT, and SHEPHERD, Circuit Judges.

———————

SHEPHERD, Circuit Judge.

Jeanette Jackson appeals the district court's[1] adverse grant of summary judgment in her employment discrimination action against United Parcel Service, Inc. (UPS) brought pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. We affirm.

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

I.

Since 1985, Jackson has been employed by UPS in several capacities, including part-time employee in the package center (also known as the "hub"), package car driver, and air combo driver. Since 2006, she has been employed in a feeder driver position, which involves transporting UPS packages on a large tractor trailer. In this action, Jackson raised claims of discrimination and retaliation based on promotion decisions made by UPS in 2004, 2005, and 2007.

An explanation of the two different promotion processes used by UPS is helpful to understanding Jackson's claims. In 2004 and 2005, UPS used an "Opt-In" promotion process. Under this scheme, an employee interested in a promotion as a full-time supervisor was required to submit a "letter of intent" to UPS indicating interest. A promotion packet would then be sent to the employee's direct manager. The direct manager was responsible for returning the completed promotion packet to UPS's district human resources department. If the direct manager did not return a completed packet, the employee would not advance in the promotion process.

Upon return of the completed packet, the employee would take an objective test. If the employee passed the test, the employee would advance to a panel interview during which members of management would ask the employee standardized questions. If the employee received a passing score on the panel interview, the employee would be placed in the "ready-now pool" of potential candidates for full-time supervisory positions. When a position opened, the hiring manager, district human resources manager, and applicable division manager would consider "ready-now" candidates for the open position based on relevant work history and other job-related factors. The hiring manager would make the final hiring decision.

In 2006, UPS adopted the Management Assessment Promotion Process (MAPP) for selecting employees for promotion to full-time supervisory positions. As with the

Opt-In system, employees were required to submit a letter of intent. The employee's manager would complete an "initial assessment," and if the employee received a passing score on the initial assessment, the employee would take a standardized "Applicant Profile" test (AP test). In order to pass the AP test, the employee had to obtain a score of two or more on a scale of one to five. Employees who passed the AP test were administered an "In Box" written exam. Upon passing the written exam, the employee underwent a panel interview, similar to the one used in the Opt-In process. If the employee received a passing score on the interview, the employee would be placed in a pool of candidates to be considered for promotion to full-time supervisory positions.

In 2004, Jackson's direct manager was Tom Raines. Despite the fact that Jackson submitted a letter of intent to be promoted, as she had each year since 1988, Raines failed to complete the promotion packet for Jackson in 2004 as required under the Opt-In system for further processing of Jackson's request for promotion. Although Jackson had previously taken and passed the objective test, Jackson never proceeded to the panel interview phase because the promotion packet was not returned by Raines.

UPS promoted Virginia Fry, a white female, and Christopher Lee, a white male, to positions as full-time supervisors in the hub in 2004. Jackson maintains that she is similarly situated to these individuals and should have received one of the promotions. In 2005, UPS promoted Sherry Grinder, a white female, from the position of full-time supervisor to a manager position. Although Jackson has since conceded that she does not qualify for the manager position because she was never a full-time supervisor, she now argues that the district court should have considered other promotion decisions UPS made in 2005 under the continuing violation doctrine.

In 2007, under the MAPP promotion system, Paul Hall, Jackson's manager at that time, did not give Jackson a passing score on the initial assessment. Thus,

Jackson did not advance through the MAPP system and was not considered for a promotion opportunity. Jackson claims that Hall did not give her a passing score in retaliation for her prior EEOC complaints and a prior lawsuit involving actions taken by Hall.

Jackson initiated two actions: the first challenging the promotion decisions in 2004 and 2005 and the second claiming Hall retaliated against her in 2007 when he gave her a failing score on the initial assessment. The district court consolidated the lawsuits, and Jackson filed a Second Amended Complaint consolidating her claims from both actions. The district court granted summary judgment in favor of UPS on all claims. It held, as relevant to this appeal, that Jackson was not similarly situated to Fry or Lee, Jackson failed to challenge any promotion from 2005 other than that of Grinder, and Jackson did not allege that Hall knew about any protected activity in 2007 or allege that the score she received from Hall was causally connected to any protected activity. Jackson appeals the district court's grant of summary judgment on her race and sex discrimination claims for 2004, race discrimination claim for 2005, and retaliation claim for 2007.

II.

We have recently clarified the appropriate standard for consideration of motions for summary judgment, including those filed in employment discrimination cases, as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the

> nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, No. 09-1131, 2011 WL 2135636, at *7 (8th Cir. June 1, 2011) (en banc) (citations and quotations omitted). Our review of a district court's grant of summary judgment is de novo. Id.

Absent proof of direct evidence of discriminatory motive, a discrimination action is analyzed under the McDonnell Douglas burden-shifting framework, and the claim proceeds in three stages. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). First, the plaintiff must establish a prima facie case of discrimination. Id. at 802. Second, the defendant may rebut the prima facie case by articulating a non-discriminatory rationale for its action. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981). Third, the plaintiff must prove that the defendant's proffered rationale was merely pretext for discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

To establish a prima facie case of race or sex discrimination in a failure-to-promote claim, a plaintiff must show that: "(1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." Shannon v. Ford Motor Co., 72 F.3d 678, 682 (8th Cir. 1996). Failure to formally apply for a position does not bar a plaintiff

from establishing a prima facie case, as long as the plaintiff "made every reasonable attempt to convey [her] interest in the job to the employer." Chambers v. Wynne Sch. Dist., 909 F.2d 1214, 1217 (8th Cir. 1990) (quotation omitted).

A.

With respect to the 2004 promotion decisions, Jackson argues that the district court erred in determining that she was not similarly situated to Fry or Lee. First, Jackson maintains that the failure to have a completed application packet should not disqualify her from being considered similarly situated because UPS knew of her interest in a promotion. Second, she argues that UPS's rationale for promoting Fry and Lee–that each had prior part-time supervisory experience in the hub–was merely pretext for discrimination because Jackson would be equally qualified after attending training for the position upon promotion.

To be similarly situated, Jackson needed to show that she was "considered a viable candidate[] for the position." See Peterson v. Scott Cnty., 406 F.3d 515, 523 (8th Cir. 2005) (abrogated in part by Torgerson, No. 09-1131, 2011 WL 2135636, at *7, *23) (citing Ottman v. City of Independence, Mo., 341 F.3d 751, 757 (8th Cir. 2003) (finding candidates similarly situated where both met the minimum qualifications for the position)). Under the "Opt-In" promotion system utilized by UPS in 2004, to be considered a "viable candidate" the applicant needed to have completed the promotion application process, which involved the applicant's direct manager returning a completed promotion packet with respect to the applicant and the applicant completing a panel interview. UPS promoted Fry and Lee who were in the "ready-now" pool of candidates. Jackson was not among the "ready-now" candidates because her direct manager elected not to complete and submit Jackson's promotion packet and Jackson never underwent a panel interview. Accordingly, Jackson was not a viable candidate and thus was not similarly situated to Fry and Lee, both of whom had completed promotion packets and had successfully participated in panel

interviews. We note that Raines was not Fry or Lee's direct manager, and Raines did not complete and return a promotion packet for any employee under his direction in 2004. While we may question the wisdom of UPS using a system that allows it to deny promotion opportunities to interested employees due merely to the negligence or apathy of a direct manager such as Raines, the fact that Fry and Lee had completed packets and Jackson did not, standing alone, evinces no discriminatory motive on behalf of defendants.

Jackson responds that there was a genuine issue of material fact as to whether she had a completed promotion packet and should have been considered a "ready-now" candidate in 2004. To support this claim, Jackson cites several statements from the depositions of various UPS employees and managers, pointing particularly to the deposition testimony of Bob Cowan to demonstrate that she should have received consideration for the supervisor positions. Reviewing these depositions in the light most favorable to Jackson, there is nothing to support the conclusion that Jackson had a completed promotion packet in 2004. Cowan's deposition merely reflects that had Raines returned the completed promotion packet, Jackson would have received a panel interview. Accordingly, Jackson did not have a completed promotion packet and was not similarly situated to Fry or Lee. Thus, she has failed to carry her burden of showing a prima facie case of race or sex discrimination based on UPS's promotions of Fry and Lee, and the district court properly granted summary judgment on these claims.

B.

In 2005, Jackson filed only one EEOC complaint which concerned the promotion of Sherry Grinder to the position of manager. Jackson admits that she was not qualified for that manager position because she did not have supervisory experience, but she argues that the district court should have construed her complaint under the continuing violation doctrine as challenging all of UPS's 2005 promotion decisions, including that of two white, male employees.

Jackson's reliance on the continuing violation doctrine is misplaced. The continuing violation doctrine is not applicable to failure-to-promote claims, which arise from discrete employment actions. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002); High v. Univ. of Minn., 236 F.3d 909, 909 (8th Cir. 2000) (per curiam) ("This court has never applied the continuing violations doctrine to a discrete act, such as failure to promote, and we decline to do so now."). Jackson's complaint does not allege a claim concerning the promotion of the two white, male employees in 2005 nor does Jackson allege that she was similarly situated to them. Accordingly, the district court properly granted summary judgment on claims arising from UPS's 2005 promotion decisions.

C.

Jackson next argues that Hall, her manager in 2007, retaliated against her by giving her a failing score on her initial assessment, which in turn disqualified her from taking the supervisor test under the MAPP system. Jackson argues that Hall was retaliating against her because she filed grievances against him in 2006. In that year, Hall disqualified Jackson from driving after she was involved in an accident. As we noted in Jackson v. United Parcel Service, Inc., 548 F.3d 1137, 1139 (8th Cir. 2008), Jackson filed grievances related to this disqualification with the union and the EEOC in June 2006. UPS responds that Jackson has presented no evidence that Hall knew about her filed grievances or gave her a failing grade on the supervisor test in 2007 because of the grievances.

As we explained in Jackson's prior case,

Title VII prohibits retaliation against an employee who files charges of discrimination. Because Jackson presented no direct evidence of retaliation, we apply the burden-shifting analysis established in McDonnell Douglas, 411 U.S. 792. Therefore, the plaintiff first must demonstrate a prima facie case of retaliation to survive summary judgment. To meet this burden, Jackson must show that (1) she engaged

-8-

in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action.

Jackson, 548 F.3d at 1142 (citations and quotations omitted).

The only proffered evidence from Jackson to show retaliatory motive is her own statement that Hall gave her a failing grade because he was retaliating against her for filing an EEOC complaint. A party's "unsupported self-serving allegation[]" that her employer's decision was based on retaliation does not establish a genuine issue of material fact. See Smith v. Int'l Paper Co., 523 F.3d 845, 848 (8th Cir. 2008) (quoting Bass v. SBC Commc'ns, Inc., 418 F.3d 870, 872 (8th Cir. 2005)). Accordingly, the district court correctly determined that Jackson failed to make a prima facie showing of retaliation. Furthermore, even if Jackson had presented a prima facie case, UPS proffered legitimate, non-discriminatory reasons for why Jackson received a failing score on her initial assessment, which Jackson failed to rebut.

D.

Finally, Jackson argues that the district court abused its discretion when it struck her statement of disputed facts for failure to conform to local court rules. See Nw. Bank & Trust Co. v. First Ill. Nat'l Bank, 354 F.3d 721, 725 (8th Cir. 2003) (standard of review). Local Rule 56.1 of the Rules of the United States District Court for the Eastern and Western Districts of Arkansas provides, "If the non-moving party opposes the [summary judgment] motion, it shall file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine issue exists to be tried." In striking Jackson's statement, the district court described the submission as "265 random and disembodied quotations from various depositions (including a verbatim recitation of a question from UPS's counsel to Jackson at her deposition and Jackson's statements of opinion) and is neither short nor concise and does not comply with Local Rule 56.1."

In her brief before this court, Jackson offers no argument as to why the district court's striking of the statement for noncompliance with the local rule was error. Finding no abuse of discretion, we affirm. See Jones v. United Parcel Serv., Inc., 461 F.3d 982, 991 (8th Cir. 2006).

### III.

Accordingly, we affirm the district court's grant of summary judgment.

_____