# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1467

_____

Lena Gibson; James Gibson,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　Plaintiffs - Appellants,　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　Eastern District of Arkansas.
American Greetings Corporation,　　*
　　　　　　　　　　　　　　　　　*
　　　　　　Defendant - Appellee.　*

_____

Submitted: January 10, 2012
Filed: March 5, 2012

_____

Before MURPHY, BYE, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

　　James and Lena Gibson, husband and wife, appeal the district court's[1] grant of summary judgment in favor of American Greetings Corporation ("AGC") on their race and age discrimination, and retaliation claims. We affirm.

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

# I

Lena Gibson, an African-American female, has worked at AGC since January 1975 in a number of departments, performing a variety of job duties, and is currently still employed at AGC. She was approximately age fifty-three at the time of events giving rise to her lawsuit. In this action, Lena claims AGC failed to cross-train her for higher-level positions due to race discrimination, age discrimination, and retaliation for filing two internal complaints alleging race and age discrimination.

James Gibson is an African-American male, and is married to Lena Gibson. AGC hired James in 1990. He was age fifty-two when AGC terminated his employment. James alleges his termination was the product of age and race discrimination. In addition, he claims AGC retaliated against him in response to Lena's internal complaints, and his own internal complaint alleging discrimination, which was pending at the time of his termination.

Two AGC policies are particularly useful to understanding the Gibsons' complaints. First, AGC has in place a Solutions Mediation Program ("Solutions"), which allows employees to bring disputes before a neutral mediator in an effort to resolve employees' grievances amicably. Allegations of race and age discrimination represent two types of grievances an employee may submit for mediation.

Second, AGC employees are subject to a progressive discipline policy as described in the Associate Handbook. According to the Handbook, an employee may be disciplined in the form of a written warning for violations including, but not limited to, failure to maintain production standards, carelessness or inattention to safety rules, or a violation of the attendance policy. An employee with two or more written warnings on file during a twelve-month work period is ineligible for a promotion or transfer. Furthermore, an employee may be discharged after receiving five written warnings. If an employee works for a period of one year without receiving any

written warnings, prior violations are not counted against that employee for purposes of the progressive discipline. This one year period is based on time worked, not on a calendar year; thus, time spent on qualified leave or vacation is not credited towards this one year period.

A. Lena Gibson

In August 2005, Lena began receiving written warnings for things such as failing to follow proper procedure or having an error rate outside company guidelines. Although Lena admits to receiving these warnings, she generally denies their validity.

About a month after receiving her third warning in June 2006,[2] Lena submitted a claim to Solutions, alleging her supervisors had discriminated against her because of her race. She also claimed these individuals' actions toward her were in retaliation for filing a discrimination charge against the company several years earlier. In October 2006, the parties appeared before a neutral mediator and reached an amicable resolution of Lena's grievances. There was no finding of discriminatory conduct by AGC. Lena requested, and was granted, a transfer from first shift to second shift with retention of her then-current job classification as a Power Truck Operator at her then-current rate of pay.

On two occasions in 2007, Lena applied for open positions which would have allowed her to cross-train. AGC claims she was ineligible for the first position of power truck operator for holiday order filling, which it had posted in July 2007, because she had three written warnings on her disciplinary record. AGC presented evidence the position was awarded to Kelvin Street, a thirty-three year-old African-American male. In August 2007, Lena applied to two job openings: one

_____

[2]Lena Gibson has not received any additional written warnings since June 2006.

position was for work as a back up line dispatcher in the shipping department, and the other was for a back up line control clerk in the receiving and stores department. Lena was offered, and accepted, the position as a back up line dispatcher in the shipping department. AGC maintains this position was awarded to Lena in error given the three written warnings on her record. Despite the error, Lena's manager allowed her to retain the position with a higher rate of pay. Because Lena accepted the Back Up Line Dispatcher position, the Back Up Line Control Clerk position was awarded to another employee, Vincent Hill, a forty year-old African-American male. Lena denies she was not eligible for any of the positions, and claims the alleged written warnings were pretext for denying her the position. She also claims a supervisor named Patsy Graham told her that Lena's manager, Charles Singleton, directed that Lena Gibson was not to be cross-trained.

Lena filed a second Solutions claim in December 2007, alleging race discrimination, age discrimination, and retaliation.

### B. James Gibson

James initially worked at AGC as a Power Truck Operator in Returned Goods. From August 1990 through October 2005, James received performance reviews that were "commendable," "exceeding expectations," or "distinguished," and had a clean record with the exception of two informatives,[3] and two written warnings. James denies the validity of those disciplinary actions.

In February 2006, James began receiving a series of verbal and written warnings which culminated in his termination. On February 21, 2006, management

---

[3]According to AGC's policy manual, an "informative" is a verbal warning, documented in writing. It does not rise to the level of a written warning, and is not counted towards the progressive discipline policy.

verbally reprimanded James for failing to adhere to the call-in policy, which required employees to report an absence at least thirty minutes before a scheduled shift. Although James admits these events occurred, he denies the validity of the warning, and claims he had provided a written doctor's excuse. On June 29, 2006, James again violated the thirty-minute call-in policy and received the next level of discipline, an informative. James similarly denies the validity of this informative, and again claims he had provided a written doctor's excuse.

On November 21, 2006, and December 19, 2006, James received his first and second written warning, respectively, for again failing to follow the thirty-minute call-in policy. James admits receiving the written warnings, but currently denies their validity. On March 9, 2007, James received an informative for safety violations after he was observed operating his power truck in an unsafe manner. James denied he was driving in an unsafe manner in writing on the informative, claiming "[t]he person accusing me would be wrong." J.A. at 122.

James received his third written warning on September 19, 2007, for safety violations, when a load of stock fell off the power truck he was operating, nearly striking another employee. As a result, James was relieved of his power truck operator job and placed elsewhere within the facility. He was replaced by Earnest Tunstall, a sixty-three year-old African-American male. James denies the factual allegations underlying the third warning, and states the allegations were used as a pretext to relieve him of his power truck operator job. On November 1, 2007, James received his fourth written warning after he failed to follow the thirty-minute call-in policy. James again denies the validity of this warning.

On December 7, 2007, James submitted a dispute through Solutions, alleging he was subjected to discrimination on the basis of his race and age, and that he had been retaliated against because his wife, Lena, had filed a Solutions claim.

James's fifth and final written warning arose because he allegedly failed to meet uniform time standard for the four-week period beginning January 6, 2008, through January 27, 2008. According to AGC, as of January 2008, all employees were required to meet or exceed a 90% efficiency rating, irrespective of race or age. James denies this standard was applied uniformly. In addition, James claims he worked in a group which made it impossible to determine his individual standard because of the group performance, and asserts this false accusation was used as a pretext for his discharge. As a result of this final warning, on February 19, 2008, AGC informed James he was being terminated under AGC's progressive discipline policy.[4] AGC presented evidence it replaced James with a fifty-six year-old African-American male.

### C. The Gibsons' Legal Claims

Lena and James Gibson brought suit against AGC alleging race discrimination, age discrimination, and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, the Civil Rights Act of 1991, and the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101 to 16-123-108. Lena alleged in her complaint that throughout her employment she had been subjected to different standards than her younger, white colleagues, she had been blamed for the mistakes of others, and that AGC generally failed to acknowledge her seniority and refused her cross-training while giving such opportunities to younger, white employees. She asserts these discrepancies in treatment were a result of racial and age discrimination,

---

[4]James also received an automatically generated letter in mid-February, informing him the company had determined he had abandoned his job because he failed to show up for three consecutively-scheduled work days. James claims this was because of a misunderstanding between him and his manager that occurred after his fifth warning, but prior to his formal termination. For purposes of this appeal, we only need address James's termination pursuant to the progressive discipline policy.

-6-

and retaliation for filing Solutions claims. James similarly alleged he was blamed for the mistakes of others and subjected to different efficiency standards compared to his younger, white colleagues. He claims these differences in treatment were a result of race and age discrimination, as well as retaliation in response to his wife's and his own participation in AGC's Solutions Mediation program, and for filing an EEOC discrimination charge.

The district court granted summary judgment in favor of AGC on all claims. It stated neither plaintiff had produced direct evidence of discrimination, and concluded under the McDonnell Douglas burden-shifting framework, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807 (1973), neither James nor Lena had produced sufficient evidence to make out a prima facie case of race or age discrimination. The district court reasoned "unsupported and conclusory allegations cannot defeat summary judgment," and generally found the discrimination claims failed because neither plaintiff offered "proof beyond speculation and conjecture." Alternatively, the district court found that even if the Gibsons had presented a prima facie case, they had failed to prove any actions taken by AGC were pretext for either race or age discrimination. As for the Gibsons' retaliation claims, the district court concluded Lena offered no evidence to demonstrate she suffered an adverse employment action as a result of her participation in the Solutions program, and that no reasonable fact finder could infer a causal connection between James's Solutions claim or the EEOC charge and his termination. In addition, the court noted AGC had offered legitimate, non-retaliatory reasons for terminating James, which he failed to show were pretextual.

On appeal, the Plaintiffs argue the district court improperly granted summary judgment because genuine issues of material fact exist. The Gibsons specifically raise two issues which they contend the district court failed to address. First, the Gibsons argue their testimony corroborates each other's, particularly in light of the

district court's acknowledgment their claims are parallel.  Second, the Gibsons claim the district court failed to account for the testimony of former AGC employee Mary Clarksenior.  The Gibsons presented Clarksenior's testimony via a deposition transcript recorded on January 4, 2006, in an unrelated case in which numerous employees alleged age and race discrimination claims against AGC.  See Bell v. Am. Greetings Corp., 279 F. App'x. 415 (8th Cir. 2008) (summarily affirming the district court's grant of summary judgment on all claims in favor of AGC).  The Gibsons assert Clarksenior worked at AGC for twenty-one years,[5] and held positions including a checker[6] in the packaging department and a data entry operator in computer operations.  The Gibsons pointed to portions of Clarksenior's testimony where she alleged some supervisors applied different production standards to employees based on age and race, often relaxing or removing standards for white employees, while maintaining strict production standards for black employees.  See J.A. at 227-28, 232-33; Tr. at 87-88, 99-100.[7]  Clarksenior further testified to differences in pay rates among black and white employees.  See J.A. at 233; Tr. at 100.[8]

---

[5]Clarksenior's deposition on file in case 3:04-cv-00303-BRW in the Eastern District of Arkansas, Document 154-Exhibit H, from which the Gibsons produced excerpts in this case, indicates Clarksenior was employed at AGC between 1981 and 2002.  Tr. at 10.

[6]According to Clarksenior, a checker works directly with supervisors to assign and set up jobs, and handles confidential documents, and enters data into the computer.  See supra note 5, Tr. at 65.

[7]See also the transcript on file in the district court, supra note 5, Tr. at 121-22, 148.

[8]See also the transcript on file in the district court, supra note 5, Tr. at 139-41, 148.

"We may affirm a district court's grant of summary judgment on any basis supported by the record." Menz v. New Holland N. Am., Inc., 507 F.3d 1107, 1110 (8th Cir. 2007). "We review a district court's decision to grant a motion for summary judgment de novo, applying the same standards for summary judgment as the district court." Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 514 (8th Cir. 2011). We have recently described the appropriate standard in considering summary judgment motions, including employment discrimination cases, as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (internal quotation marks and citation omitted). To clarify, "[a]lthough the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth

specific facts sufficient to raise a genuine issue for trial." Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). We also note that we analyze the Gibsons' Title VII and Arkansas Civil Rights Act claims under the same standards. McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 860 (8th Cir. 2009).

### A. Race Discrimination

The Gibsons may survive AGC's motion for summary judgment in one of two ways. They may either "present admissible evidence directly indicating unlawful discrimination," or alternatively, they could create "an inference of unlawful discrimination under the burden-shifting framework established in McDonnell Douglas Corp. . . . ." Humphries v. Pulaski Cnty. Special Sch. Dist., 580 F.3d 688, 692 (8th Cir. 2009) (internal quotation marks and citations omitted). To prove intentional discrimination through direct proof, a plaintiff must establish "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision." Putnam v. Unity Health Sys., 348 F.3d 732, 735 (8th Cir. 2003) (internal quotation marks and citation omitted). Because neither James nor Lena presented direct evidence of race discrimination, we analyze their claims under the McDonnell Douglas burden-shifting framework. See Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 792 (8th Cir. 2011).

Under the McDonnell Douglas burden-shifting framework, a "plaintiff must [first] establish a prima facie case of discrimination." Jackson v. United Parcel Serv., Inc., 643 F.3d 1081, 1086 (8th Cir. 2011). To establish a prima facie case for race discrimination, a plaintiff "must show (1) he is a member of a protected class, (2) he

met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." Lake v. Yellow Transp., Inc., 596 F.3d 871, 874 (8th Cir. 2010). If the plaintiffs succeed in establishing a prima facie case, "the defendant may rebut the prima facie case by articulating a non-discriminatory rationale for its action." Jackson, 643 F.3d at 1086. In response, "the plaintiff must prove that the defendant's proffered rationale was merely pretext for discrimination." Id. The plaintiff may prove pretext by "adducing enough admissible evidence to raise genuine doubt as to the legitimacy of [the defendant's] motive." Anderson v. Durham D & M, L.L.C., 606 F.3d 513, 521 (8th Cir. 2010) (internal quotation marks and citation omitted).

We begin by acknowledging Lena and James do raise similar claims, which may shed some light on managerial motives: both Gibsons generally allege they were subjected to differing efficiency standards based on their race and age, and assert they were blamed for the mistakes of others, leading to what the Gibsons claim were unwarranted written warnings in their records. See Sandoval v. Am. Bldg. Maint. Indus., Inc., 578 F.3d 787, 802-03 (8th Cir. 2009) (finding evidence of other sexual harassment claims highly probative of the type of workplace environment the plaintiff experienced); Williams v. ConAgra Poultry Co., 378 F.3d 790, 794 (8th Cir. 2004) ("We believe that evidence of racial bias in other employment situations could permissibly lead to the inference that management was similarly biased in the case of [the plaintiff's] firing."). In addition, similar allegations regarding differing standards were also made by Clarksenior, though the events she described must have occurred prior to her termination in 2002, well before the Gibsons began receiving the warnings at issue here in 2005 and 2006, respectively. We also acknowledge that deposition testimony of non-parties may, depending on the facts and circumstances, be used to show discriminatory intent in the context of a § 1981 claim. See Bennett v. Nucor Corp., 656 F.3d 802, 809-810 (8th Cir. 2011).

But even assuming the Gibsons collective evidence established a prima facie case of race discrimination, summary judgment was still proper for both Lena and James because the evidence they presented was insufficient to prove AGC's actions were merely pretext for discrimination. See, e.g., Anderson, 606 F.3d at 521 (noting the court would assume plaintiff could establish a prima facie case and proceed directly to analyzing the discrimination claim under the pretextual prong of the analysis). "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." Lake, 596 F.3d at 874. "We have observed that there are 'at least two routes' for demonstrating a material question of fact as to pretext." Anderson, 606 F.3d at 521 (citing Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1120 (8th Cir. 2006)). "First, a plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact. Second, a plaintiff can directly persuade the court that a prohibited reason more likely motivated the employer." Id. (internal quotation marks and citation omitted).

AGC explained it denied Lena one opportunity to cross-train as a power truck operator for holiday order filling, a position it had posted in July 2007, because she had three written warnings in her record. Lena's general allegations other employees did not receive written warnings for similar actions, or that younger, white employees with less seniority were given more favorable opportunities—without specifically identifying a similarly situated employee who is not African-American—is insufficient to survive summary judgment. See Wheeler v. Aventis Pharm., 360 F.3d 853, 858 (8th Cir. 2004) (noting the burden for establishing a "similarly situated" employee at the pretext stage is rigorous; plaintiff must prove that employees were similarly situated in all relevant respects), abrogated on other grounds by Torgerson, 643 F.3d at 1043. In addition, Lena has not presented any evidence, other than her own allegations, to demonstrate the warnings issued to her were not based in fact. See

Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 (8th Cir. 1994) (affirming summary judgment on race discrimination claims where "plaintiff presented no such evidence other than his own unsubstantiated allegations in deposition[,]" and concluding that "[i]n light of plaintiff's failure to adduce any independent evidence to substantiate his disparate treatment claim, we agree with the district court that there is no genuine issue of fact on the issue of pretext . . . .") (internal citation omitted). Furthermore, Lena has not persuaded us AGC issued those warnings with the intent to discriminate. On the contrary, AGC presented excerpts from Lena's employment record, which included the written warnings at issue. Although Lena refused to sign the two written warnings for failing to meet quality standards, she also refused to include any comments on the warnings. No evidence—other than Lena's later accusations—indicates that Lena's supervisors falsely accused her of failing to meet required quality levels. Accordingly, the district court properly granted AGC summary judgment on Lena Gibson's race discrimination claim.

Similarly, AGC explained James was terminated only after he accumulated five written warnings on his record. Because the record reflects each of these warnings was given in response to conduct prohibited by company policies, "the burden ultimately rests on [James] to show a genuine issue for trial about whether the employer acted based on an intent to discriminate rather than on a good-faith belief that the employee committed misconduct justifying termination." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 995 (8th Cir. 2011) (internal quotation marks and citation omitted). Because James has failed to "point to enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive," he has failed to prove pretext on the part of AGC. Id. (internal quotation marks and citation omitted); see also Richmond v. Bd. of Regents of Univ. of Minn., 957 F.2d 595, 598 (8th Cir. 1992) (finding employer produced documentation that employee's performance was unsatisfactory, that plaintiff ignored progressive warnings and discipline, and that

plaintiff's performance did not improve, sufficient to support legitimate, non-discriminatory reason for termination). Thus, summary judgment in favor of AGC on James Gibson's race discrimination claim was also proper.

B. Age Discrimination

"The ADEA prohibits discrimination against employees, age 40 and over, because of their age." Rahlf v. Mo-Tech Corp., Inc., 642 F.3d 633, 636-37 (8th Cir. 2011) (citing 29 U.S.C. § 623(a)(1), 631(a)). Similar to claims of race discrimination, when a plaintiff "has no direct evidence of [age] discrimination, his claims are analyzed under the familiar burden-shifting scheme of McDonnell Douglas Corp. . . . ." Haigh v. Gelita USA, Inc., 632 F.3d 464, 468 (8th Cir. 2011). Because the Gibsons have failed to show direct evidence of age discrimination, we apply this approach.

First, "[t]o establish a prima facie case of age discrimination, [a plaintiff] must show he (1) was at least forty years old, (2) suffered an adverse employment action, (3) was meeting his employer's legitimate expectations at the time of the adverse employment action, and (4) was replaced by someone substantially younger." Morgan v. A.G. Edwards & Sons, Inc., 486 F.3d 1034, 1039 (8th Cir. 2007). Once a plaintiff "establishes a prima facie case, the burden shifts to [the employer] to provide a legitimate, nondiscriminatory reason for the [adverse employment action]." Haigh, 632 F.3d at 468. "Finally, if [the employer] provides such a reason, the burden returns to [the plaintiff] to prove [the employer's] reason was mere pretext for discrimination." Id. Furthermore, to succeed in proving age discrimination, a plaintiff "must show, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Id.

Again, even assuming both Lena and James presented sufficient evidence to make out a prima facie case of age discrimination, they have both failed to present adequate proof to overcome AGC's proffered legitimate, nondiscriminatory reasons for its employment actions—limiting Lena's cross-training opportunities and terminating James. See Tusing, 639 F.3d at 515 ("[W]e will assume without deciding that [the plaintiff] has established a prima face case [of age discrimination]."). "When an employer articulates a nondiscriminatory reason for an [employment action,] the factual inquiry proceeds to a new level of specificity." Rahlf, 642 F.3d at 638 (internal quotation marks and citation omitted). "The showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for [an employment action]. A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus." Haigh, 632 F.3d at 470 (internal quotation marks and citation omitted). Lena generally claims she was denied cross-training—thereby limiting her chances for a promotion—while most of the people who got better jobs were younger and had less seniority. James claims he was replaced by a younger, white male, a claim AGC successfully rebutted. The Gibsons' general allegations are not "sufficient, specific evidence of disparate treatment to survive summary judgment." Anderson, 606 F.3d at 524.

### C. Retaliation

"Title VII's anti-retaliation provision prevents employers from retaliating against employees who have acted to vindicate their statutorily protected rights by reporting harassment or discrimination in the workplace." Brannum v. Mo. Dep't of Corr., 518 F.3d 542, 547 (8th Cir. 2008) (internal quotation marks and citation omitted). "When no direct evidence of discriminatory retaliation is asserted, as is the case at hand, the McDonnell Douglas analysis applies." Twymon v. Wells Fargo & Co., 462 F.3d 925, 936 (8th Cir. 2006). "First, the plaintiff must put forth a prima

facie case of retaliation." Id.  To establish a prima facie case of retaliation, "an employee must show that he engaged in protected activity; he suffered a materially adverse action that would deter a reasonable employee from making a charge of employment discrimination; and there is a causal connection between the protected activity and the adverse action." Barber, 656 F.3d at 801-02 (internal quotation marks and citation omitted).  "[I]f the plaintiff puts forth a prima facie case, the employer may rebut the resulting presumption of discrimination by articulating a legitimate, non-retaliatory reason for the adverse employment action.  Finally, if the employer proffers a race-neutral rationale, the plaintiff may attempt to refute the asserted reason as mere pretext." Twymon, 462 F.3d at 936 (internal citation omitted).

Lena has not produced sufficient evidence to indicate AGC's employment actions allegedly denying her  cross-training were retaliatory in nature.  "A party's unsupported self-serving allegation that her employer's decision was based on retaliation does not establish a genuine issue of material fact." Jackson, 643 F.3d at 1088 (internal quotation marks and citation omitted).  Thus, the district court properly determined Lena failed to make out a prima facie case of retaliation.  As for James, even if we assumed he established a prima facie case of retaliation simply by nature of the fact AGC terminated him while his Solutions claim was pending, see O'Bryan v. KTIV Television, 64 F.3d 1188, 1193-94 (8th Cir. 1995) (noting "close proximity in time between plaintiff's administrative filings and his termination established, at minimum, a genuine issue of material fact on the elements of his prima facie case") (internal quotation marks and citation omitted), AGC offered legitimate, non-discriminatory reasons for James's termination.  Because James "presented no evidence from which a jury could conclude that [AGC's] proffered legitimate reason for his termination was pretextual . . ., summary judgment on [James Gibson's] § 1981 retaliation claim was appropriate." Gacek v. Owens & Minor Distrib., Inc., No. 11-1417, 2012 WL 246524 at *4 (8th Cir. Jan. 27, 2012).  See also Hervey v. Cnty. of Koochiching, 527 F.3d 711, 723 (8th Cir. 2008) ("Where timing is the only basis for

a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.") (quoting Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2nd Cir. 2001)).

## III

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of AGC on all claims.

_____