# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 12-3129

———————————————

Nancy G. Holmes

*Plaintiff - Appellant*

v.

Trinity Health

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the District of North Dakota - Bismarck

——————————

Submitted: June 11, 2013
Filed: September 4, 2013

——————————

Before LOKEN, BEAM, and BYE, Circuit Judges.

——————————

BEAM, Circuit Judge.

Nancy Holmes appeals the district court's[1] grant of summary judgment in favor of Trinity Health ("Trinity") and the denial of her motion for a default judgment. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

———————————————

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

## I.    BACKGROUND

Holmes began working for Trinity in 1975. In 2009, John Kutch became Trinity's Chief Executive Officer ("CEO"). At that time, Holmes was the Senior Vice President and Chief Operating Officer ("COO"), and, as such, was a member of the senior management team. On September 9, 2010, Holmes's employment with Trinity ended after a meeting between Holmes and Kutch. During the meeting, the two discussed Kutch's actions as CEO and Holmes's displeasure with his management style, specifically that Kutch met with Holmes's subordinates without informing her. Also, at the meeting Holmes indicated she was going to meet with Trinity's Board of Directors to discuss Kutch's failure to respond to a report issued by the North Dakota Department of Health. According to Holmes, Kutch responded by asking her if she was threatening him. At some point during this conversation the two became confrontational. Kutch testified that Holmes asked Kutch if he wanted her to resign, to which Kutch said he wanted her to do her job. Following the meeting with Kutch, Holmes relayed the happenings of the meeting to the Vice President of Human Resources, Paul Simonson. According to Holmes, she did not tender her resignation to either Kutch or Simonson, but Trinity, on the other hand, maintains Holmes resigned during her conversation with Kutch. Later that evening, Kutch's assistant, Allison Repnow, called Holmes and told her to turn over her company cell phone and computer.

On January 28, 2011, Holmes filed this lawsuit, after receiving a right to sue letter from the Equal Employment Opportunity Commission. Relevant to this appeal, Holmes alleged Trinity wrongfully terminated her employment in violation of the Age Discrimination in Employment Act ("ADEA"); in violation of Title VII of the Civil Rights Act on the basis of sex; in violation of the North Dakota whistleblower statute; and that Kutch intimidated her in violation of North Dakota Century Code section 34-01-04 ("intimidation statute"). On March 30, 2012, Holmes filed a "Motion for Summary Judgment or Default Judgment," asking the court to dispose of the case due

to alleged discovery violations by Trinity.  Trinity also filed a motion for summary judgment.  The district court denied Holmes's motion because the court had not previously issued an order to compel discovery, nor had one been requested.  The court granted Trinity's motion, concluding that, while the work environment was "less-than-desirable," Holmes had failed to raise a genuine issue of fact on any of her claims.  Holmes appeals.

## II.    DISCUSSION

### A.    Discovery Sanctions

Holmes appeals the district court's denial of her "Motion for Summary Judgment or Default Judgment," which asked the court to grant a dispositive discovery sanction against Trinity for its "willful pattern of action in failing to comply" with the scheduling order.  We review the denial of discovery sanctions for an abuse of discretion and give substantial deference to the district court's determination.  Stepnes v. Ritschel, 663 F.3d 952, 965 (8th Cir. 2011).  The district court reasoned that because it had not issued, nor had Holmes requested, an order to compel discovery, such an extreme sanction was not justified.  On appeal, Holmes argues that the court's preliminary scheduling order was the type of order contemplated by Federal Rule of Civil Procedure 37 and that no other motion by Holmes nor order from the court was necessary.  Our circuit has not adopted this position; accordingly, we find no abuse of discretion in the district court's denial of the extreme sanction sought by Holmes.  Chrysler Corp. v. Carey, 186 F.3d 1016, 1019 (8th Cir. 1999) ("In order to impose sanctions under Rule 37, there must be an order compelling discovery, a willful violation of that order, and prejudice to the other party."); Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1213 (8th Cir. 1981) ("We recognize that a Rule 37(b) sanction should not be imposed by the trial court unless a Rule 37(a) order is in effect. . . . [A] Rule 37(a) order insures that the party failing to comply with discovery is given adequate notice and an opportunity to

contest the discovery sought prior to the imposition of sanctions." (citation omitted)); see also R.W. Int'l Corp. v. Welch Foods, Inc., 937 F.2d 11, 15-16 (1st Cir. 1991) (where a party sought a dismissal under Rule 37(b) without first requesting an order to compel, the court concluded that bypassing a Rule 37(a) order was "tantamount to a ball player sprinting from second base to home plate, without bothering to round, let alone touch, third base," and also concluded that a scheduling order was not a suitable surrogate for a Rule 37(a) order).

## B. Summary Judgment

Holmes further appeals the district court's grant of summary judgment in favor of Trinity as to her age discrimination, sex discrimination, whistleblower and intimidation claims. We review de novo the grant of summary judgment, considering the facts in the light most favorable to Holmes and giving her the benefit of all reasonable inferences in the record. Butler v. Crittenden Cnty., Ark., 708 F.3d 1044, 1048 (8th Cir. 2013). We will only uphold a grant of summary judgment where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Id. at 1049.

### 1. Age and Sex Discrimination Claims

The ADEA prohibits discrimination against employees, over the age of 40, because of their age. 29 U.S.C. § 623(a); Gibson v. Am. Greetings Corp., 670 F.3d 844, 855 (8th Cir.), cert. denied, 133 S. Ct. 313 (2012). Title VII makes it "an unlawful employment practice for an employer to . . . discharge any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a); Roberts v. Park Nicollet Health Servs., 528 F.3d 1123, 1127 (8th Cir. 2008). In both ADEA and Title VII discrimination cases, the claimant may either offer direct evidence of the discrimination or satisfy the burden-shifting scheme established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-803 (1973). Gibson, 670 F.3d at 855-56

(establishing the standard for age discrimination cases); <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031, 1044 (8th Cir. 2011) (setting forth the standard for sex discrimination cases).

On her ADEA and Title VII claims, Holmes asserts that the district court erred in granting summary judgment because she provided direct evidence of both age and sex discrimination. Direct evidence is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." <u>Togerson</u>, 643 F.3d at 1044 (quotation omitted). To support her claims, Holmes points to the deposition testimony of two former employees, Nicola Roed and Deedra Hoffart, as direct evidence of both age and sex discrimination. Roed, for example, stated, "I really think that anyone that was older with more experience [Kutch] felt that they were threatening to him, and I felt that way personally." Hoffart made statements of a similar vein: "I felt like to other members of the senior leadership team[,] I felt like my age and perhaps even the fact that I was a female was, I think, a limiting factor." After reviewing this testimony, we conclude that these statements are not strong evidence that rises to the level of direct proof. They do not provide a "specific link" between the alleged discriminatory motive and the adverse employment decision, but rather merely provide the thoughts and feelings of former employees regarding the workplace. Thus, the district court did not err by moving to a <u>McDonnell Douglas</u> analysis on Holmes's age and sex discrimination claims.

Holmes also contends that the district court incorrectly granted summary judgment on her age discrimination claim because she failed to establish a prima facie case. To establish a prima facie case, Holmes was required to show she: "(1) was at least forty years old, (2) suffered an adverse employment action, (3) was meeting [her] employer's legitimate expectations at the time of the adverse employment action, and

(4) was replaced by someone substantially younger." Gibson, 670 F.3d at 856 (quotation omitted).

It is undisputed that Holmes was at least 40 years old and was meeting Trinity's expectations at the time of the alleged adverse employment action, satisfying the first and third elements of a prima facie case. Assuming, without holding, that the district court correctly concluded there was a genuine question of material fact as to whether Holmes suffered an adverse employment action, we turn to the fourth element–whether Holmes was replaced by someone substantially younger. Trinity asserts that Holmes was replaced by Barbra Brown, who was over seventy years old. In April 2011, Brown was hired as the Vice President of Patient Care Services and Chief Nursing Officer. Holmes claims that Brown was not her replacement because Trinity eliminated the COO position. The evidence, even viewed in the light most favorable to Holmes, does not support her contention. While Kutch testified that the COO position was not filled and that the position no longer exists at Trinity, the evidence in the record indicates that Brown, acting under a different title, assumed almost all of Holmes's job functions. The fact that the job title changed does not compel a finding in Holmes's favor. See Hart v. Bon Secours Baltimore Health Sys., 455 F. App'x 337, 339-40 (4th Cir. 2011) (per curiam) (affirming a district court's grant of summary judgment on an ADEA claim where an older replacement assumed the responsibilities of the terminated employee, but the job titles were not precisely the same); cf. Christensen v. Titan Distrib., Inc., 481 F.3d 1085, 1096 n.5 (8th Cir. 2007) (finding the fourth element of a prima facie case where the job title changed, but a younger employee performed the same duties); Ultimately, without any other evidence that Trinity did in fact replace Holmes with someone substantially younger, Holmes failed to meet her prima facie case. Accordingly, the district court appropriately dismissed her age discrimination claim on summary judgment.

Likewise, Holmes challenges the lower court's grant of summary judgment on the basis that she did not establish a prima facie case on her sex discrimination claim.

To establish a prima facie case, Holmes was required to prove that she "(1) is a member of a protected class; (2) was qualified to perform her job; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of the protected class." Wilkie v. Dep't of Health and Human Servs., 638 F.3d 944, 954-55 (8th Cir. 2011).

Again, the parties do not dispute the first two elements of a prima facie case, and assuming that the district court correctly determined there was an issue of fact as to whether Holmes suffered an adverse employment action, we turn to the final element–whether Holmes was treated differently than similarly situated male employees. Holmes alleges the Vice President of Human Resources, Simonson, was a similarly situated male employee and challenges the district court's conclusion to the contrary. Although Simonson was a member of the senior management team, he was not a "similarly situated" employee, because he did not engage in the same conduct. Specifically, Simonson did not voice similar dissatisfactions with Kutch's behavior and management style. Evance v. Trumann Health Servs., LLC, 719 F.3d 673, 678 (8th Cir. 2013) ("[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." (alteration in original and quotation omitted)). Holmes does not advance any evidence that indicates she was treated differently than any other similarly situated male employee. Thus, she failed to meet her prima facie case, and the district court properly granted summary judgment.

## 2. Whistleblower Claim

Holmes also challenges the district court's grant of summary judgment as to her retaliatory discharge claim under the North Dakota whistleblower statute, North Dakota Century Code section 34–01–20. According to Holmes, Kutch was concerned Holmes was going to report to the Board of Directors his failure to create a plan

following the corrective action letter from the North Dakota Department of Health and that Holmes had other knowledge relating to Kutch's alleged inappropriate use of company funds and property. The North Dakota Department of Health had investigated Trinity in February 2010, and issued a letter, dated June 10, 2010, in response to that investigation. The letter indicated that Trinity was in compliance with the relevant Medicare requirements, but also cited some deficiencies. With regard to the deficiencies, the letter stated Trinity was not required to submit a plan for correcting the deficiencies, but that Trinity was permitted to submit a "plan of correction" if it wished to do so.

The North Dakota whistleblower statute provides "'[a]n employer may not discharge . . . an employee . . . because . . . [t]he employee . . . in good faith, reports a violation or suspected violation of federal or state law or rule to an employer or to a governmental body or law enforcement official.'" Dahlberg v. Lutheran Soc. Servs. of N.D., 625 N.W.2d 241, 252 (N.D. 2001) (alterations in original) (quoting N.D. Cent. Code § 34–01–20(1)). The statute requires that a "report" be made for the purpose of blowing the whistle to expose an illegality. Jacob v. Nodak Mut. Ins. Co., 693 N.W.2d 604, 611 (N.D. 2005). To prove retaliatory discharge under the statute, Holmes must demonstrate: (1) she engaged in protected activity; (2) Trinity took an adverse employment action against her; and (3) a causal link between her protected conduct and the adverse employment action. Dahlberg, 625 N.W.2d at 253. "An employee engages in protected activity when she reports, in good faith, a violation or suspected violation of federal or state law to her employer." Ambers v. Vill. Family Serv. Ctr., Inc., 329 F. Supp. 2d 1046, 1052-53 (D.N.D. 2004).

Holmes did not engage in a protected activity, as she did not report a violation or suspected violation of federal or state law to her employer. The letter plainly states that Trinity was in compliance and no further report was necessary. Moreover, Holmes's testimony indicates that she approached Kutch because he did not share the report with her in a timely manner and that "[she thought Kutch] was threatened that

[she] was going to go to the Board of Directors with that information."  Based on the evidence in the record alone, no reasonable jury could find that Holmes made a "report" to her employer of a suspected violation of federal or state law.  See Dahlberg, 625 N.W.2d at 254 (concluding that "'mere mention of [the suspected violation to the employer] did not constitute a "report"' because the employee knew his employer was already aware of the potentially illegal conduct" (quoting Rothmeier v. Inv. Advisers, Inc., 556 N.W.2d 590, 593 (Minn. Ct. App. 1996))).   Holmes did not engage in a protected activity.  Thus, the district court correctly granted summary judgment on her claim.

### 3.    Intimidation Claim

Finally, Holmes challenges the district court's grant of summary judgment on her claim under the North Dakota intimidation statute.[2]  North Dakota courts have not acknowledged whether a private cause of action exists under this statute. Accordingly, we must determine what the state's highest court would hold if it were called on to decide the issue.  Dahl v. ConAgra, Inc., 998 F.2d 619, 621 (8th Cir. 1993).  When determining whether a private cause of action exists, North Dakota court's consider three factors:

---

[2]North Dakota Century Code section 34-01-04 reads:

Every person who, by any use of force, threats, or intimidation, prevents any person employed by another from continuing or performing the person's work or from accepting any new work or employment, and every person who uses any force, threats, or intimidation to induce such hired person to relinquish the person's work or employment or to return any work the person has in hand before it is finished, is guilty of a class B misdemeanor.

> (1) whether the plaintiff is one of the class for whose special benefit the statute was enacted; (2) whether there is an indication of legislative intent, explicit or implicit, either to create such remedy or to deny one; and (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff.

Ernst v. Burdick, 687 N.W.2d 473, 477 (N.D. 2004). Assuming that Holmes was a member of the class that the statute was enacted to benefit (i.e., she was an employee), we turn to the second factor. Holmes asserts that, with regard to the second factor, because the language of the statute "enumerate[d] a criminal penalty," but does not "provide language exclusive to a criminal penalty," the court should "imply that a civil remedy may be applied." This reasoning does not persuade us, and as the North Dakota Supreme Court recognized, "[t]he legislature's silence in failing to expressly provide a private right of action is a strong indication it did not intend such a remedy." Id. at 478. Because Holmes's argument fails on the second factor, we need not address the third. Accordingly, we conclude the district court correctly granted summary judgment on this claim because there is no private right of action under the intimidation statute. See Humann v. KEM Elec. Coop., Inc., 450 F. Supp. 2d 1006, 1015 (D.N.D. 2006) (concluding there is no private cause of action in the intimidation statute).

## III.    CONCLUSION

We affirm the district court's order granting summary judgment in favor of Trinity and denying Holmes's motion for a default judgment.

_____