# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 19-1316

———————————————

Teresa Yearns[1]

*Plaintiff - Appellant*

v.

Koss Construction Company

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

——————————

Submitted: March 12, 2020
Filed: July 1, 2020

——————————

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.

——————————

SHEPHERD, Circuit Judge.

Teresa Yearns[1] brought this lawsuit against her former employer, Koss Construction Company (Koss), alleging that Koss terminated her employment in retaliation for her complaints about pay discrimination based on sex in violation of

---

[1]Appellant is referred to as both Teresa Yearns and Teresa Miller in the record.

the Equal Pay Act (EPA). The district court[2] granted summary judgment in favor of Koss. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In May 2013, Koss, a construction company that specializes in paving highways and airplane landing strips, hired Yearns as a general laborer and traffic controller. During her employment, she became a Quality Control trainee at Koss through the Kansas Department of Transportation training program. Quality Control employees sample and conduct quality control tests on natural materials used to create the paving materials. As a trainee, Yearns assisted Quality Control Technicians (QCTs), including Steven Tackett, in these duties. Despite completing the training program in 2014, Yearns was not promoted from the trainee position to the salaried QCT position.

In June 2015, while working at a job site in Pratt, Kansas (Pratt Project), Yearns asked Koss's Loss Prevention and Compliance Officer, Rebecca Harmon, why she had not been promoted to the salaried QCT position even though she had completed the training program. Yearns explained that she was frustrated because she believed she was doing the same job as her male peers but receiving less pay. Harmon explained to Yearns that she was not promoted because there were no QCT positions available in her division but that Yearns would be considered for the position when one became available. In July or August of 2015, Harmon and another company executive, George Payne, called Yearns to follow up on her verbal complaint. After the phone call, Harmon and Payne called Yearns's division manager, David Vestal, to share with him Yearns's complaint. At some point shortly

---

[2]The Honorable Willie J. Epps, Jr., United States Magistrate Judge for the Western District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

after learning of Yearns's complaint, Vestal remarked to Harmon: "If we didn't have these women, we wouldn't have all these problems."

In August 2015, Koss asserts that the Pratt Project began to "wind down" and that Koss's overall work volume in Kansas began to decrease. Koss asserts that because of the Pratt Project wind-down and changes in state funding for highway projects, Yearns's division did not have sufficient work to continue employing all its employees in their existing roles. As a result, Vestal offered Yearns, as well as other employees at the Pratt Project, an opportunity to transfer to a different job site. Yearns declined Vestal's offer to transfer. On August 20, 2015, Yearns sent an email to Vestal in which she complained about not being paid for hours she had worked. Two days later, on August 22, 2015, Vestal terminated Yearns's employment. At the time she was terminated, Yearns told Vestal that unemployment benefits would not be enough for her. Yearns obtained new employment as a paraprofessional for a Missouri school district in September 2015. On September 15, 2015, Vestal completed the Separation Notice for Yearns, which stated she had been "[l]aid off for lack of work and found other employment. Unemployment not enough." The Separation Notice also marked Yearns as not "eligible for rehire."

Two years later, Yearns filed a lawsuit against Koss, alleging Koss had terminated her employment in retaliation for her complaints about pay discrimination based on sex in violation of the EPA. The district court granted summary judgment in favor of Koss, finding that Yearns failed to present a genuine issue of material fact that Yearns engaged in protected conduct that caused the termination decision. Yearns now appeals.

## II.

"We review the district court's grant of summary judgment de novo, viewing the evidence and drawing all reasonable inferences in the light most favorable to

[Yearns], the nonmoving party." Kirkeberg v. Canadian Pac. Ry., 619 F.3d 898, 903 (8th Cir. 2010). "We will affirm if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Lindeman v. St. Luke's Hosp. of Kan. City, 899 F.3d 603, 605 (8th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). Yearns argues the district court erred in granting Koss's motion for summary judgment because she offered evidence creating a genuine issue of material fact as to whether: she engaged in activity protected under the EPA; there was a causal link between this protected activity and her termination; and Koss's proffered reason for her termination is mere pretext for retaliation.

The EPA, which is codified as part of the Fair Labor Standards Act (FLSA), prohibits pay discrimination based on sex. 29 U.S.C. § 206(d). It further protects employees from retaliatory discharge because that "employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" her activity protected under the EPA. 29 U.S.C. § 215(a)(3); see also Hutchins v. Int'l Bhd. of Teamsters, 177 F.3d 1076, 1082 (8th Cir. 1999) (applying FLSA anti-retaliation provision in analyzing EPA retaliation claim). "To survive a motion for summary judgment on a retaliation claim, [Yearns] either must offer direct evidence of retaliation or create an inference of retaliation under the McDonnell Douglas [Corp. v. Green, 411 U.S. 792 (1973)] burden-shifting framework." Hutton v. Maynard, 812 F.3d 679, 683 (8th Cir. 2016). Because Yearns has not produced any direct evidence, "[w]e apply the familiar McDonnell Douglas . . . burden-shifting framework to [Yearns's] retaliatory discharge claim." Grey v. City of Oak Grove, 396 F.3d 1031, 1034 (8th Cir. 2005); see also Broadus v. O.K. Indus., Inc., 238 F.3d 990, 991 (8th Cir. 2001) (applying McDonnell Douglas framework to EPA retaliation claim).

At step one of the McDonnell Douglas framework, the employee must first establish a prima facie case of retaliation, which requires the employee to show that "[s]he participated in statutorily protected activity, that [the employer] took an adverse employment action against h[er], and that there was a causal connection

-4-

between them." Grey, 396 F.3d at 1034-35. At step two, the burden shifts to the employer to articulate legitimate, non-retaliatory reasons for the discharge. See id. at 1035. Finally, at step three, the burden shifts back to the employee to show that the "legitimate, nonretaliatory reasons articulated by [the employer] were not the true reasons for discharge, but merely a pretext for retaliation." Id. For purposes of this analysis, we will assume that Yearns has met her prima facie burden at step one. We also conclude Koss has satisfied its burden at step two by presenting evidence that Vestal, the decisionmaker,[3] terminated Yearns because the work at the Pratt Project, as well as Koss business in Kansas overall, was winding down, and Yearns refused the offer of a transfer to another job site. Accordingly, only step three remains: whether Yearns has presented sufficient evidence to create a genuine issue of material fact that Koss's proffered reason is mere pretext for retaliation.

In the retaliation context, there are "at least two routes for demonstrating a material question of fact as to pretext: first, a plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact; or, second, a plaintiff can directly persuade the court that a prohibited reason more likely motivated the employer." Gibson v. Geithner, 776 F.3d 536, 540 (8th Cir. 2015). Creating a genuine issue of material fact regarding pretext "requires more substantial evidence than it takes to make a prima facie case because unlike evidence establishing a prima facie case, evidence of pretext and retaliation is viewed in light of the employer's justification." Logan v. Liberty Healthcare Corp., 416 F.3d 877, 881 (8th Cir. 2005) (alterations omitted) (internal quotation marks omitted). For instance, "timing alone is not enough to establish pretext, even if it can 'create an inference of retaliation' at step one." Couch v. Am. Bottling Co., 955 F.3d 1106, 1109 (8th Cir. 2020) (citations

---

[3]Yearns does not make it clear who she alleges was the final decisionmaker in her termination decision. However, because, in her opening brief, she identifies Vestal as the person who terminated her, and Vestal filled out her Separation Notice, we will assume Vestal was the final decisionmaker for purposes of this appeal.

omitted) (quoting <u>Wright v. St. Vincent Health Sys.</u>, 730 F.3d 732, 738 (8th Cir. 2013)).

Yearns argues she has presented sufficient evidence to defeat summary judgment on the issue of pretext via both routes: that Koss's proffered reason has no basis in fact and that a retaliatory reason more likely motivated Vestal's termination decision. For the reasons that follow, we conclude Yearns has failed to satisfy her burden at step three of the <u>McDonnell Douglas</u> framework, and thus the district court did not err in granting Koss's motion for summary judgment on Yearns's EPA retaliation claim.

A.

Yearns argues she has presented evidence to show that Koss's proffered reason for the termination—lack of work at the Pratt Project—has no basis in fact. While Yearns concedes that she was offered, and she refused, a transfer to another project with a different crew,[4] she argues she has presented evidence that demonstrates the Pratt Project was not winding down.[5] Specifically, she notes that another QCT employee, Tackett, was brought to the Pratt Project immediately after she was terminated, indicating there was no lack of quality control work for her to perform at the Pratt Project. While immediately replacing a former employee may serve to rebut an employer's proffered reason that there was a lack of work for the former employee,

[4]While Yearns initially appears to deny that there is evidence showing that she refused a transfer, she concedes that Vestal "proposed another position to her." Opening Br. 19; <u>see also</u> R. Doc. 69-2.

[5]Yearns also questions Koss's description of the wind-down as part of the "winter shutdown," which she alleges is dubious since Koss terminated her in August. However, a Koss employee clarified that "winter shutdown" is a term used to generally describe seasonal shutdowns within the construction business that can occur at any time, including August. R. Doc. 69-6, at 13.

see Donathan v. Oakley Grain, Inc., 861 F.3d 735, 742 (8th Cir. 2017), Yearns has failed to present evidence creating a genuine issue of material fact as to whether Tackett replaced Yearns on the Pratt Project.

The record shows that Tackett worked on the Pratt Project in July and August while Yearns was still employed at the Pratt Project. R. Doc. 75-3, at 4, 6. Even if Tackett had started at the Pratt Project after Yearns's termination, Yearns has not provided evidence that she served in the same role as Tackett. Unlike Yearns, Tackett was a salaried QCT and had at least 17 more certifications than Yearns. R. Doc. 63-1, at 3-4. Further, it is undisputed that the number of employees and employee hours at the Pratt Project drastically declined in the Fall of 2015. Indeed, the time report shows there were 68 employees working on the project in August but only 33 in September and only two employees by November. R. Doc. 75-3, at 6-7. Thus, because Tackett performed a more advanced QCT function than Yearns and the number of employees necessary at the Pratt Project declined in the Fall of 2015, Tackett's arrival on the Pratt Project does not undermine Koss's claim that there was no longer any work available for Yearns at the Pratt Project.

Accordingly, we conclude Yearns has not presented sufficient evidence to create a genuine issue of material fact on the question of whether there was no basis in fact for Koss's proffered reason for her termination.

## B.

Yearns also argues she has presented evidence to show that a retaliatory reason more likely motivated Vestal's decision to terminate Yearns. Specifically, she points to Vestal's animus against female employees who lodge complaints and the Separation Notice's designation marking Yearns as not "eligible for rehire."

First, Yearns argues that evidence of Vestal's animus against female employees who complain demonstrates that retaliation for Yearns's pay-discrimination complaints motivated his termination decision. In support of this contention, Yearns relies on Harmon's declaration in which Harmon averred that when she had relayed Yearns's complaint to Vestal, Vestal said: "If we didn't have these women, we wouldn't have all these problems." R. Doc. 69-4, at 2. While, under some circumstances, this statement could support the claim that retaliation against Yearns for her pay-discrimination complaints motivated Vestal's decision, the fact that, after making this statement, Vestal offered Yearns an opportunity to transfer to another job site as the Pratt Project began to wind down undercuts this argument. Indeed, Vestal allegedly made this statement around the time when Yearns first asked Harmon when she would be promoted to a salaried QCT position in June 2015, R. Doc. 69-3, at 9, and Vestal offered Yearns the opportunity to transfer in August 2015.

Harmon also averred that it was clear that Yearns had "ruffled feathers" by complaining about pay discrimination and that there were two other instances in which female employees were terminated or had been reassigned after filing complaints. R. Doc. 69-4, at 2-4. However, Harmon provided no factual basis for these conclusory assertions, and "[c]onclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment." Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1109 (8th Cir. 1998). Further, Harmon did not provide any date for those instances in which female employees were terminated or reassigned and did not aver that the decisionmaker involved in those instances was Vestal. See Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 388 (2008) ("The question whether evidence of discrimination by other supervisors is relevant in an individual ADEA case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.").

Second, Yearns argues the not "eligible for rehire" designation on her Separation Notice is evidence that retaliation motivated Vestal because the designation prevents her from being rehired by Koss, and Koss's termination policy does not allow a decisionmaker to mark a former employee as not eligible for rehire merely because they obtained new employment. Koss argues the plain language of the termination policy did allow Vestal to designate her as not eligible for rehire in light of her new employment as a paraprofessional for a Missouri school district, explaining that many Koss employees who are laid off during periods of low business volume draw unemployment benefits for those periods, and Koss rehires them when the work picks up again. Koss argues that because Yearns had obtained new employment and indicated to Vestal that unemployment benefits would not be sufficient, Yearns would not have been available for rehire when the Koss work resumed, and thus the designation was appropriate.

While it would be improper for us to weigh these competing arguments at the summary judgment stage, we conclude that Yearns has not provided evidence that Vestal, or any other Koss decisionmaker, has treated any other former employee differently with regard to this designation in the Separation Notice. For example, Yearns has not identified any Separation Notice in which a Koss decisionmaker marked as eligible for rehire any former employee that obtained new employment. See Smith v. Allen Health Sys., Inc., 302 F.3d 827, 835 (8th Cir. 2002) (finding that since plaintiff "pointed to no other employees who were treated differently under the progressive discipline policy, [defendant's] failure to give written warning does not tend to prove that the reason given for [plaintiff's] firing was pretextual"). And while Harmon stated in her declaration that obtaining new employment has never been a reason for marking a former employee as not eligible for rehire, R. Doc. 69-4, at 3, this is another assertion unsupported by evidence in the record. See Rose-Maston, 133 F.3d at 1109.

Accordingly, we conclude Yearns has not presented sufficient evidence to create a genuine issue of material fact on the question of whether a retaliatory reason more likely motivated Vestal's decision to terminate Yearns.

## III.

For the foregoing reasons, we affirm.

_____