**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2569
_____

LISA CARLSON,
                              Appellant

v.

QUALTEK WIRELESS, LLC
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-22-cv-00125)
U.S. District Judge: Hon. Mark A. Kearney
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 10, 2023
_____

Before: SHWARTZ, RESTREPO, and CHUNG, <u>Circuit Judges</u>.

(Filed:  August 9, 2023)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

1

SHWARTZ, Circuit Judge.

Lisa Carlson appeals the District Court's order granting summary judgment in favor of Qualtek Wireless, LLC on her Title VII, Equal Pay Act, and Pennsylvania Wage Payment and Collection Law ("WPCL") claims. Because the Court did not err, we will affirm.

I

In 2010, Carlson began working for Velocitel, Inc., a company based in Illinois that provided wireless telecommunications services. In 2017, Qualtek[1] acquired Velocitel and offered Carlson employment, with an annual base salary of $92,300. The offer letter also stated that Carlson had the "potential" to receive a bonus of up to ten percent of her base salary, but that any bonus was "discretionary" and would be "based upon Company, business group, and individual performance." D. Ct. ECF No. 31 at 52. Carlson accepted Qualtek's offer.

In February 2018, Qualtek offered Bruce Neff a Finance Manager position in the company's Pennsylvania headquarters with an annual base salary of $90,000 and eligibility to participate in the company's bonus program with a potential bonus of $10,000 prorated to his start date. Unlike Carlson, who lives in Minnesota and does not have a bachelor's degree, Neff resides in Pennsylvania and holds a bachelor's degree in

_____

[1] Qualtek operated under a "shared services model," which means that its back-office functions, including its finance team, were concentrated in its Pennsylvania headquarters.

2

accounting. In March 2018, Qualtek offered, and Carlson accepted, the same position as Neff but with a base salary of $105,000 and an "annual potential bonus eligibility [of] $20,000" that would be prorated for 2018. Id. at 58.

At the end of 2018, Qualtek increased Carlson's salary to $115,000 and awarded her a $5,000 bonus, which was paid in two installments. After the first installment was paid, Carlson notified her payroll manager and her supervisor about an "error" with the bonus she received, but she did not mention any gender-based disparities. Id. at 33. Qualtek acknowledged that her potential annual bonus amount was inaccurately listed as lower than it should have been in the company's internal human resources system and should be changed. This, however, did not result in a greater bonus.

In April 2019, Qualtek promoted Neff to a Director of Finance position based in the company's Pennsylvania headquarters and raised his annual salary to $115,000. In October 2019, Qualtek hired Brandon Ebeling for an open Director of Finance position, also based in the Pennsylvania headquarters, at a salary of $125,000 with a potential bonus eligibility of fifteen percent of his annual salary. Ebeling resides in Pennsylvania and holds a bachelor's degree in finance and a master's degree in accounting. Carlson had been recommended to replace the outgoing Finance Director and she complained to Qualtek personnel about not being promoted because she was a woman. Qualtek's Human Resources Director, in turn, scheduled a meeting between Carlson and the company's Vice President of Human Resources, but Carlson canceled the meeting for "fear of retaliation." App. 222.

3

In November 2019, Carlson applied for an open Director of Finance position based in Qualtek's headquarters in Pennsylvania. Carlson testified that she knew at the time she applied that the position required her to be in Pennsylvania and that she was unwilling to relocate there. Shortly after Carlson applied, Qualtek's Human Resources Director advised her colleagues that she told Carlson that the position was in Pennsylvania and that Carlson told her that Carlson purchased a home in Minnesota and that "she is not relocating." D. Ct. ECF No. 31 at 87. Carlson then asked Qualtek's Director of Recruiting if the company would consider hiring anyone based outside of the company's Pennsylvania office. The Director of Recruiting confirmed that the position was located at Qualtek's headquarters in Pennsylvania.

In January 2020, Qualtek increased Carlson's annual salary to $118,450 and paid her a $2,875 year-end bonus for 2019. Carlson complained to human resources about the calculation of her bonus. One of Carlson's supervisees emailed Qualtek personnel about the amount of her bonus as compared to her male counterparts. Carlson emailed minutes later "echoing" those "concerns" and questioning how Qualtek calculated its bonuses. App. 342. In response, the Vice President of Human Resources explained that bonuses are discretionary and that the 2019 bonuses were paid at a reduced amount due to Qualtek's performance that year.

In early 2020, Qualtek eliminated all Finance Manager positions, including Carlson's position. Carlson was briefly reassigned to a new role, but on January 31, 2020, Qualtek's Vice President of Finance announced a restructuring of the corporate

4

finance team.  The same day, Qualtek terminated Carlson's employment.

Carlson sued Qualtek, alleging, among other things, that the company (1) retaliated against her for her complaints by failing to promote her, giving her less than her full potential bonus, and terminating her, in violation of Title VII and the Equal Pay Act; and (2) violated the WPCL.[2]  The District Court granted summary judgment in favor of Qualtek, holding that Carlson (1) failed to adduce sufficient evidence of pretext for her Title VII and the Equal Pay Act retaliation claims, Carlson v. Qualtek Wireless LLC, 2022 WL 3229399, at *8-14 (E.D. Pa. Aug. 10, 2022); and (2) failed to meet her burden on the WPCL claim, id. at *14-16.

Carlson appeals.

II[3]

A

We first address Carlson's retaliation claims.  Title VII makes it unlawful for an

---

[2] Carlson also alleged that Qualtek engaged in gender discrimination in violation of the Equal Pay Act, but she expressly waived that claim at oral argument before the District Court.  Carlson also clarified at oral argument that her Title VII claim is predicated only on retaliation, not discrimination.

[3] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review of the District Court's order granting summary judgment.  Resch v. Krapf's Coaches, Inc., 785 F.3d 869, 871 n.3 (3d Cir. 2015).  We apply the same standard as the District Court, viewing facts and drawing all reasonable inferences in the non-movant's favor.  Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We may affirm for any reason supported by the record.  Brightwell v. Lehman, 637 F.3d 187, 191 (3d Cir. 2011).

employer to retaliate against an employee for opposing "any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). The Equal Pay Act makes it unlawful for an employer to retaliate against an employee in the form of "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted … any proceeding under or related to this [act]." 29 U.S.C. § 215(a)(3).

Retaliation claims under both Title VII and the Equal Pay Act are analyzed under the McDonnell Douglas framework. Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 257 (3d Cir. 2017).[4] A prima facie retaliation case requires a plaintiff to demonstrate (1) that she engaged in a protected activity, (2) that she suffered an adverse employment action, and (3) causation. Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301-02 (3d Cir. 2012). "If the plaintiff succeeds, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action. [If the defendant does so,] [t]he burden then shifts back to the plaintiff to [show] . . . that the articulated reason was a mere pretext for discrimination." Capps v. Mondelez Global, LLC, 847 F.3d 144, 152 (3d Cir. 2017) (quoting Ross v. Gilhuly, 755 F.3d 185, 193 (3d Cir. 2014)).

---

[4] While we have yet to analyze an Equal Pay Act retaliation claim under the McDonnell Douglas framework, we will follow our sister circuits and do so here. See, e.g., Lindsley v. TRT Holdings, Inc., 984 F.3d 460, 469 (5th Cir. 2021); Yearns v. Koss Construction Co., 964 F.3d 671, 674 (8th Cir. 2020); Krause v. City of La Crosse, 246 F.3d 995, 1000 (7th Cir. 2001).

We will assume that Carlson engaged in protected activity by making gender discrimination complaints concerning bonuses and her promotion, and that she suffered three adverse actions as a result: (1) failure to be promoted; (2) failure to receive her full bonus; and (3) termination. We will therefore examine the record for material facts concerning Qualtek's proffered "legitimate, non-retaliatory reason[s]," Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)), for its actions and whether those reasons were merely "pretext for retaliation," Krouse, 126 F.3d at 501. To show pretext, Carlson must either (1) submit evidence that "meaningfully throw[s] into question, i.e., [casts] substantial doubt upon, the [employer's] proffered reasons," or (2) "come forward with sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision[s]."[5] Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

As to the promotion, Qualtek explains that Carlson was not promoted because she was unwilling to relocate to Pennsylvania. Carlson has not shown that this non-retaliatory reason was pretextual. Carlson was repeatedly told that the position would require her to be in Pennsylvania and the two men ultimately hired for the position both

---

[5] The plaintiff "cannot simply show that the employer's decision was wrong or mistaken but rather must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted nondiscriminatory reasons." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 199 (3d Cir. 2015) (quotations omitted).

worked in Qualtek's Pennsylvania headquarters.[6]  Indeed, Carlson does not dispute that the position was in Pennsylvania or that she was unwilling to relocate there.  Rather, she contends that she could effectively do the job from Minnesota, and that her supervisors recommended her for a promotion while she resided there.[7]  Even if these contentions are correct, they do not show any "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions" in Qualtek's proffered non-retaliatory reason, Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 199 (3d Cir. 2015), and therefore Carlson's failure to promote claim lacks merit.[8]

As to the bonus amount, Qualtek explains that the bonus amount was discretionary.[9]  Carlson contends, in turn, that her bonus was "not discretionary,"

---

[6] Carlson asserts that the geographic requirement was "only added after [she] complained of gender discrimination," Appellant's Br. at 38, but she cites no evidence to support her claim.  In fact, the record shows that Qualtek's location requirement had long been in place because its "back office functions," including finance, had been based in Pennsylvania.  D. Ct. ECF No. 31 at 140-41.

[7] While one of her supervisors testified that he believed Carlson could have been effective while working from Minnesota, he also acknowledged that "there was a greater push [within Qualtek] to move [the] finance [team] into the corporate location [in Pennsylvania]," App. 145, which was corroborated by other Qualtek employees, including the company's Vice President of Finance.

[8] The record also supports Qualtek's explanation that it did not promote Carlson because she lacked a requisite bachelor's degree.  A 2020 posting for the position disclosed this requirement, every member of the finance team in a similar position possessed at least a bachelor's degree, and Qualtek personnel, including Carlson's former supervisor, confirmed that this was a prerequisite for the position.

[9] Because the 2018 bonus determination was made before Carlson complained about gender-based disparities, her retaliation claims based on her 2018 bonus fail.  We therefore focus on her 2019 bonus.

Appellant's Br. at 28,[10] but the record belies her assertion. Carlson's original offer letter stated that her bonus was "discretionary" and that her "potential" bonus would be "based upon Company, business group and individual performance." D. Ct. ECF No. 31 at 52. Her subsequent offer letter also stated that she would be entitled to a "potential bonus." Id. at 58. Carlson's former supervisor and Qualtek personnel corroborated that any bonus the company awarded was discretionary. Furthermore, after complaining about the calculation of her bonus, Carlson was repeatedly reminded that all bonuses were discretionary.[11] Carlson has produced no evidence showing that Qualtek's proffered reason for paying only a portion of Carlson's potential bonus was in retaliation for complaints protected by Title VII or the EPA. Therefore, her bonus-related retaliation claims fail.[12]

As to her termination, Qualtek states that she was terminated as part of a company-wide restructuring. Although Carlson was terminated just a week after she complained about her 2019 bonus and echoed a supervisee's complaint questioning whether differences in bonuses were discriminatory, this temporal proximity does not

---

[10] Carlson's arguments regarding the bonuses focus on discrimination under Title VII, but as discussed above, Carlson waived this claim before the District Court.

[11] Qualtek concedes that its internal database incorrectly listed Carlson's annual potential bonus, but this does not demonstrate that Carlson was contractually entitled to receive her full potential bonus.

[12] The record also supports Qualtek's explanation that it only paid part of Carlson's potential bonus due to the company's performance that year, which is consistent with the statement in Carlson's offer letter that bonuses are based in part on "Company . . . performance." D. Ct. ECF No. 31 at 52.

undermine the legitimacy of Qualtek's reasons for her termination. First, documents and testimony corroborate that Qualtek was, in fact, undergoing a company-wide restructuring at the time of Carlson's termination.[13] Second, although Carlson was the only employee who was terminated, others were affected, and the Finance Manager position was eliminated.[14] Because Carlson has failed to demonstrate that Qualtek's proffered reason for her termination was pretextual, her termination-based retaliation claims fail.

Therefore, the District Court correctly granted summary judgment in favor of Qualtek on Carlson's Title VII and Equal Pay Act retaliation claims.

B

Carlson's claim that Qualtek's failure to pay her full 2018 bonus violated the WPCL also fails.[15] The WPCL "provides employees a statutory remedy to recover wages and other benefits that are contractually due to them."[16] Oberneder v. Link Computer Corp., 696 A.2d 148, 150 (Pa. 1997). Bonuses are included in the term "wages," which

---

[13] Carlson also argues that "as a public company, any restructuring should trigger some paperwork" but "[t]here is none." Appellant's Br. at 30. Qualtek, however, was not a public company at the time of its restructuring, so the absence of formal filings does not demonstrate that the restructuring did not occur.

[14] Notably, the colleague Carlson echoed was retained as part of the company's restructuring, undermining any inference that Carlson was terminated for a retaliatory reason.

[15] As the District Court noted, Carlson conceded that the WPCL claim pertains only to the 2018 bonus, not the 2019 bonus. Carlson, 2022 WL 3229399, at *14 n.140.

[16] We assume but do not decide that Carlson, who resides in Minnesota but works for a company with headquarters in Pennsylvania, is covered by the WPCL.

is defined as "all earnings of an employe[e]." 43 Pa. Stat. § 260.2a. To recover under the WPCL, an employee "must aver a contractual entitlement to compensation from wages and a failure to pay that compensation." Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 954 (Pa. Super. Ct. 2011) (quotations omitted); see also De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003) ("The contract between the parties governs in determining whether specific wages are earned." (quotations omitted)). Carlson bears the burden to prove that she had a contractual right to a bonus. Braun, 24 A.3d at 957.

Carlson has failed to show that she was contractually entitled to any bonus. Carlson's original offer letter expressly provided that her bonus was "discretionary" and Qualtek consistently referred to Carlson's bonus amounts as her "potential bonus eligibility," which shows that Carlson's bonus was not guaranteed. D. Ct. ECF No. 31 at 52. Qualtek's admission that it failed to list Carlson's full potential bonus in its internal system is not a promise to pay Carlson's full bonus. Rather, it is simply a recognition that the system did not accurately reflect the potential bonus Carlson could have earned. Because Carlson has not shown that she is contractually entitled to her full bonus, the District Court properly granted summary judgment in favor of Qualtek on her WPCL claim.

### III

For the foregoing reasons, we will affirm.[17]

---

[17] Judge Chung dissents as to Carlson's retaliatory termination claims. She would have remanded those claims for a trial on the merits.